WILMA DEI CAS, EXECUTRIX (ESTATE OF MARY B. SHAW), ET AL. *v.* MARIE MAYFIELD ET AL. (12688)

PETERS, C. J., SHEA, SANTANIELLO, CALLAHAN and MORAGHAN, Js.

Argued February 11—decision released May 13, 1986

*Wesley W. Horton,* with whom were *Alexandra Davis* and, on the brief, *William R. Moller* and *Richard C. Stewart,* for the appellant (named defendant).

*Sandra M. McLean,* with whom was *C. Ian McLachlan,* for the appellees (plaintiffs).

CALLAHAN, J. The defendant, Marie Mayfield, has appealed from a judgment rendered by the Appellate Court in favor of the plaintiff, Wilma Dei Cas.[1] The sole issue on appeal is whether the Appellate Court erred

[1] The plaintiff Wilma Dei Cas instituted suit on her own behalf as well as in her capacity as executrix of the estate of her mother. The state tax

when it construed the language of the will of William Shaw, the father of both the plaintiff and the defendant, to give his wife, and their mother, Mary B. Shaw, a fee simple absolute in realty that he owned in New Canaan, rather than a life estate with a vested remainder in the children as urged by the defendant. *Dei Cas* v. *Mayfield,* 3 Conn. App. 106, 111, 485 A.2d 584 (1985). We find no error.

The opinion of the Appellate Court describes both the underlying facts and the procedural history of this case. Id., 106–107. Briefly, William Shaw executed a will in 1938 and died in 1944. The relevant language of his will is as follows: "Second: I give devise and bequeath all of the property of which I die seized be the same real, personal, or mixed, or where-so-ever situated, to my beloved wife, Mary B. Shaw, for her own proper use and benefit, forever. I do this knowing that my said wife will make proper provisions for any child or children then living.

"Third: At the death of my said wife, I direct all of the property then remaining shall be divided among my children, then surviving, share and share alike.

"Fourth: In the event that my wife should die at or near the time of my decease and before my children are of legal age and able to care for themselves, I hereby appoint my brother, Richard Shaw, as their guardian. Should this happen I appoint said Richard Shaw as the executor of my last will and testament."[2]

commissioner was also a defendant, but a judgment by default was rendered against him, and he is not involved in this appeal. Hereinafter, Wilma Dei Cas is referred to as the plaintiff and Marie Mayfield as the defendant.

[2] In view of our holding, i.e., that paragraph "Second" is a clear bequest of a fee simple and paragraph "Third" is ambiguous, we do not feel that any analysis of paragraph "Fourth" is necessary or helpful. The Appellate Court reasoned that: "Article fourth of the will makes it clear that the testator contemplated that his wife might die before he did, and reinforces the interpretation of article third to mean that the children would take only if their mother did not survive the testator." *Dei Cas* v. *Mayfield,* 3 Conn. App. 106, 111, 485 A.2d 584 (1985).

Paragraphs "Second" and "Third" of the will appear to be inconsistent on the issue of whether the will gives Mary B. Shaw a life estate or a fee simple absolute in the subject real estate. The defendant claims that Mary B. Shaw acquired only a life estate in the realty, with the power to consume it during her lifetime, but that she could not dispose of it by will on her death. It is the plaintiff's contention that Mary B. Shaw was devised a fee simple absolute, without limitation, and that she could dispose of it by will.

Mary B. Shaw died on January 15, 1981, leaving a last will and testament in which she gave the plaintiff the right to purchase from her estate, at a price greatly below market value, real estate on Ponus Ridge Road in New Canaan, the title to which she had acquired by the will of her husband William Shaw. If William Shaw's will gave Mary B. Shaw only a life estate, the disposition to the plaintiff in her will would be void. If, on the other hand, Mary B. Shaw had acquired a fee simple absolute under the terms of William Shaw's will, the disposition to the plaintiff would be valid.

The trial court held that Mary B. Shaw inherited only a life estate and therefore all the property that remained unexpended at her death passed in equal shares to William Shaw's daughters, the plaintiff and the defendant, under the terms of his will. The plaintiff appealed to the Appellate Court. The Appellate Court found error and held that, under the will of William Shaw, Mary B. Shaw had acquired a fee simple absolute in the realty. *Dei Cas* v. *Mayfield,* supra, 111. The defendant sought and this court granted certification. "In an appeal, after certification from the judgment of the Appellate Court, 'the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo.' *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985)." *White Oak Corporation* v.

*Department of Revenue Services,* 198 Conn. 413, 418, 503 A.2d 582 (1986). In the present case, therefore, we need determine only whether the Appellate Court erred in concluding that Mary B. Shaw had acquired, by the will of William Shaw, a fee simple absolute in the realty in question which she could dispose of by her will.

"The cardinal rule to be followed in construing a will is to find and effectuate the intent of the testator. In seeking that intent, the court looks first to the will itself and examines the words and language used in the light of the circumstances under which the will was written. *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643 [1952]; *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246 [1954]. To ascertain the intent of a particular provision, the will must be read as a whole to discover whether it discloses an underlying intent which should be considered in finding the meaning to be accorded to the particular language under construction. *Bankers Trust Co.* v. *Pearson,* 140 Conn. 332, 345, 99 A.2d 224 [1953]." *Hartford National Bank & Trust Co.* v. *Devitt,* 145 Conn. 384, 388, 143 A.2d 441 (1958). The apparent inconsistencies of paragraphs "Second" and "Third," therefore, must be harmonized if possible in a way that will preserve the intent of the testator. We believe that the construction given the will by the Appellate Court, which held that Mary B. Shaw received an estate which was subject to defeasance only in the event that she predeceased the testator and is therefore an absolute estate in fee simple, preserves William Shaw's intent.

We disagree, however, with the position of the Appellate Court that "the language of William Shaw's will does not involve a clause which contains an express and positive devise in fee . . . ." *Dei Cas* v. *Mayfield,* supra, 110. We conclude, rather, that the clause contained in the second paragraph of the will which reads,

"I give devise and bequeath all of the property of which I die seized be the same real, personal, or mixed, or where-so-ever situated, to my beloved wife, Mary B. Shaw, for her own proper use and benefit, forever," was clearly intended to give Mary Shaw an estate in fee simple. "An intention to pass an absolute estate in property is manifested by the direction that testator gives, devises and bequeaths it to a named person . . . ." *In re Morris' Estate,* 125 N.Y.S.2d 60, 61–62 (1953). The words "give and devise," or either of them would be held sufficient to carry the fee where the estate is created by will. *Burr* v. *Tierney,* 99 Conn. 647, 651, 122 A. 454 (1923). Further, the word "forever" is appropriately used in testamentary language devising an absolute estate; see *Belcher* v. *Phelps,* 109 Conn. 7, 12, 144 A. 659 (1929); and the words "own use and benefit" when construed in conjunction with "forever" do not create an ambiguity. The customary words "heirs and assigns" are missing but they are not necessary to create a fee. *Dennen* v. *Searle,* 149 Conn. 126, 136, 176 A.2d 561 (1961); *Cumming* v. *Pendleton,* 112 Conn. 569, 573, 153 A. 175 (1931); *White* v. *White,* 52 Conn. 518, 520 (1885). Additionally, a common sense reading of the precatory language in the sentence in paragraph "Second" which reads, "I do this knowing that my said wife will make proper provisions for any child or children then living," manifests an intention on the part of the testator that his wife take a fee estate and an assumption that she would make proper provision for the children.

An accepted canon of construction is "that a clear bequest of an absolute estate is not to be cut down to a lesser estate by subsequent provisions unless those subsequent provisions are at least equally clear. See *Stanton* v. *Stanton,* 140 Conn. 504, 511, 101 A.2d 789 [1953]." *Pond* v. *Porter,* 141 Conn. 56, 65, 104 A.2d 228, cert. denied sub nom. *Glover* v. *Officers & Minis-*

*ter of the Congregational Church of Hartford,* 348 U.S. 825, 75 S. Ct. 39, 99 L. Ed. 650 (1954). Since we hold that paragraph "Second" clearly creates an absolute estate, that estate is not diminished by the provisions of paragraph "Third," which are ambiguous and capable of two interpretations. The reference in paragraph "Third" to the property "then remaining" at "the death of my said wife" could be construed, as the Appellate Court noted, to refer either to the property remaining if Mary B. Shaw died in the lifetime of the testator, or to the property remaining if she died subsequent to the death of the testator. *Dei Cas* v. *Mayfield,* supra, 110–11. We think it more reasonable that, in light of the situation of William Shaw who was married and had two young daughters at the time his will was executed, paragraph "Third," while inartfully drafted, refers to the disposition of his property should his wife predecease him. In any event, "an express and positive devise of an estate in fee followed by a provision capable of construction as cutting down the fee to an inferior or lesser estate will only be so construed 'when the lesser estate is expressed in positive terms and in language which is unambiguous and incapable of any but the one meaning.' " *Scanlin* v. *Peterson,* 105 Conn. 308, 313, 135 A.2d 394 (1926), quoting, *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A. 699 (1924).

In *Hull* v. *Hull,* supra, one paragraph of the will used the words "give, devise and bequeath to my daughters . . . their heirs and assigns forever." Id., 482. Another paragraph apparently limited the gift by devising the same property to others "[a]t the decease" of the daughters. Id. This court concluded that the second clause applied only in the event of the deaths of the daughters during the lifetime of the testatrix. " 'There is [a] rule of construction which has been followed many times by this court, and which is decisive of this case. It is, that when in a will an estate in fee is followed

by an apparently inconsistent limitation, the whole should be reconciled by reading the latter disposition as applying exclusively to the event of the prior devisee in fee dying in the lifetime of the testator.' " Id., quoting *Walsh* v. *McCutcheon,* 71 Conn. 283, 287, 41 A. 813 (1898). The law also "favors the early vesting of estates, prefers the first to the second taker, and looks with disfavor upon defeasance provisions." *Meriden Trust & Safe Deposit Co.* v. *Squire,* 92 Conn. 440, 449, 103 A. 269 (1918).

When these rules are applied to the present case, they favor the interpretation that "the property then remaining" at the death of Mary B. Shaw is referring to her death during the life of the testator. Paragraph "Third," therefore does not clearly create a life estate. The Appellate Court then was correct in its conclusion that there was no clearly expressed intent in paragraph "Third" which would reduce the estate granted in paragraph "Second" to an estate less than a fee simple absolute. We therefore conclude that, under the will of William Shaw, Mary B. Shaw received a fee simple absolute in the real estate in question.

We affirm the decision of the Appellate Court.

In this opinion the other judges concurred.