GRENVILLE T. KEOGH III ET AL. *v.* GAYLE JANN ET AL.
(4520)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued January 14—decision released March 17, 1987

*John Wayne Fox,* with whom, on the brief, was *Susan L. Stratton,* for the appellants (named defendant et al.).

*D. Seeley Hubbard,* with whom, on the brief, was *Edward T. Krumeich,* for the appellees (plaintiffs).

DUPONT, C. J. This appeal arises out of a dispute over the construction of the will of Grenville T. Keogh. The issue to be determined is whether the language of the will gave the testator's second wife a life estate or a fee simple absolute estate in one third of the residue of his estate. The trial court concluded that she was devised a life estate.

The will was executed in 1975 when the testator was married to Jane Keogh. She predeceased him in 1980. In 1981, he married Joanne Keogh, who died six months after his death in 1982. At the time of his death, he had been married to his second wife for approximately

ten months. The testator was a lawyer who engaged in the practice of law with his brother at the time of the execution of the will.[1]

The language of the will to be interpreted is Article Third of the will which provides: "All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate, including any and all property over or in respect to which I may be entitled to exercise any power of disposition or appointment, which power I do hereby exercise, I give, devise and bequeath, absolutely and forever, to my beloved wife, JANE M. KEOGH, if she shall survive me, to be held in trust for her lifetime by my trustee hereinafter named, and upon her death the proceeds remaining in said trust shall be divided among my children, share and share alike.

"In the event, however, that my wife, JANE KEOGH, should predecease me, and, subsequently thereto I should remarry, then in such event, *I give, devise and bequeath, absolutely and forever to the woman I remarry that portion of my residuary estate to which she would be entitled to elect to take under the Estate Distribution Laws of the State of Connecticut;* the balance of said residuary estate, I give, devise and bequeath to my children, as aforesaid, to be divided equally among them . . . ." (Emphasis added.)

At the time that the testator's will was executed in 1975, our estate and distribution laws provided that "[o]n the death of a husband or wife, the survivor shall be entitled to *the use for life of one-third in value of all the property* . . . owned by the other at the time of

---

[1] The testator directed that all title and interest in his law practice become the sole property of his brother and law partner, Conde B. Keogh. The latter was named as the executor of his estate and was named as a defendant in this case, but did not participate in it either at trial or in this appeal. The use of the word defendant does not refer to Conde B. Keogh.

his or her death . . . . " (Emphasis added.) General Statutes (Rev. to 1975) § 46-12 (a) (now § 45-273a).

The plaintiffs are the testator's natural children and the defendants are the children of his second wife. The plaintiffs commenced this action seeking a declaratory judgment determining the proper construction of the testator's will and declaring the respective rights of the parties to his residuary estate. The plaintiffs claim that the testator's second wife received a life estate of one-third of the testator's residuary estate, which terminated at her death in 1982. The defendants, on the other hand, assert that she received one-third of the testator's residuary estate in fee, which passed to her estate at the time of her death. The trial court rendered judgment declaring that the testator's second wife received only a life estate of one-third of his residuary estate, and that at her death, the entire residuary estate passed to the plaintiffs.

The defendants claim that the trial court erred in concluding that the testator's reference to the statutory share following the use of the phrase "absolutely and forever" were words of limitation that reduced the gift to a life estate. They assert that the testator's reference to such statutory share refers only to the fractional portion of his residuary estate that was to be devised rather than to any time limitation on its use. In support of their claim, the defendants submit that by using the words "absolutely and forever" in conjunction with the reference to the statutory share, the testator intended to enlarge the life estate normally permitted by the statute to an absolute fee simple.

The use by a testator of a provision devising to his wife a share pursuant to a statute often results in ambiguity as to determining specifically what property or estate passes. Annot., 36 A.L.R.2d 147, 148, "What Passes Under Provision Of Will That Spouse Shall Take

Share of Estate Allowed or Provided By Law, Or A Provision Of Similar Import." It has been uniformly recognized, however, that the quantum of estate which passes to the surviving spouse depends on the *intention* of the testator, which is to be ascertained in accordance with the usual rules for the construction of wills. Id., 148–49. In the search for the testator's intent, the words and language used in the will must be examined in the context of the particular circumstances under which the will was written. *Dei Cas* v. *Mayfield,* 199 Conn. 569, 572, 508 A.2d 435 (1986); citing *Chase National Bank* v. *Guthrie,* 139 Conn. 178, 182, 90 A.2d 643 (1952); *First National Bank & Trust Co.* v. *Parish of St. Thomas' Church,* 141 Conn. 489, 497, 107 A.2d 246 (1954). Moreover, " '[t]o ascertain the intent of a particular provision, the will must be read as a whole to discover whether it discloses an underlying intent which should be considered in finding the meaning to be accorded to the particular language under construction. . . .' " *Dei Cas* v. *Mayfield,* supra, 572.

In the present case, the testator first used words which would ordinarily support a finding of a bequest of a fee simple estate. The words "give and devise" and "absolutely and forever" have been recognized as being sufficient to create an absolute fee simple estate. Id., 573; *Belcher* v. *Phelps,* 109 Conn. 7, 12, 144 A. 659 (1929). The testator's use of such words, however, does not necessarily lead to the conclusion that he *intended* that an absolute fee simple be devised, because these words are followed by conflicting additional words. Even a seemingly clear bequest of an absolute estate may ultimately be found to be a lesser estate through the construction of subsequent provisions which are at least equally clear in showing that it was the testator's intention to give a lesser estate. *Dei Cas* v. *Mayfield,* supra, 573–74. See also *Stanton* v. *Stanton,* 140 Conn. 504, 511, 101 A.2d 789 (1953); *Pond* v. *Porter,* 141

Conn. 56, 65, 104 A.2d 228, cert. denied sub nom. *Glover* v. *Officers & Minister of the Congregational Church of Hartford,* 348 U.S. 825, 75 S. Ct. 39, 99 L. Ed. 650 (1954). " '[A]n express and positive devise of an estate in fee followed by a provision capable of construction as cutting down the fee to an inferior or lesser estate will only be so construed "when the lesser estate is expressed in positive terms and in language which is unambiguous and incapable of any but the one meaning." ' *Scanlin* v. *Peterson,* 105 Conn. 308, 313, 135 A. 394 (1926), quoting *Hull* v. *Hull,* 101 Conn. 481, 486, 126 A. 699 (1924)." *Dei Cas* v. *Mayfield,* supra, 574. We find that the testator's reference to the statutory share was sufficient to establish his intention to reduce a fee estate to a life estate.

As is true in most cases involving the construction of wills, other cases provide guidance only because they construe similar language, and not because they construe identical language, since the language of wills is rarely identical. See *Dei Cas* v. *Mayfield,* 3 Conn. App. 106, 109, 485 A.2d 584 (1985). In *Allen* v. *Tyson,* 133 Conn. 699, 54 A.2d 490 (1947), the words "that amount to which my wife may be entitled under the laws and statutory enactments of the State of Connecticut" were construed. The court concluded that such language evinced the testator's intent to give his wife the life use of one-third of his estate. In so holding, the court noted that "[t]he deceased made a will, and, since his competency is unquestioned, it must be assumed that he knew and understood the nature of his wife's statutory share to which he referred. *Bridgeport City Trust Co.* v. *Shaw,* 115 Conn. 269, 272, 161 A. 341 [1932]." Id., 705. Although *Allen* did not interpret this language in conjunction with words such as "absolutely and forever," it is instructive in that it implies that a testator's precise reference to a widow's statutory share indicates that he intended that the devise be limited to that statutory share.

In this case, the testator was an attorney and would have known and understood the provisions of the statute to which he referred. *Bridgeport City Trust Co.* v. *Shaw,* supra, 272. His reference to such statute in his will would therefore be indicative of the fact that he intended, as of the time of the execution of his will, to give his hypothetical wife no more than a statutory share in his estate. Accord *Weller* v. *Searcy,* 123 S.W.2d 73 (Mo. 1938).

In reaching this conclusion, we note that the words "absolutely and forever" were also used by the testator in his provision for his first wife. Both parties agree that despite his use of these words, the bequest to the testator's first wife was only a life estate. See 4 W. Page, Wills § 37.20, p. 629. Words are presumed to "have the same meaning when repeated in a will, unless the context indicates a contrary intent." *Smith* v. *Groton,* 147 Conn. 272, 275, 160 A.2d 262 (1960). No such contrary intent can be found here. Rather, the context in which the words were used indicates that in both places, the testator intended to devise life estates. He gave his first wife a life estate in all of the remainder of his estate, and he gave his second wife a life estate in one third of the remainder.

We agree with the trial court's conclusion that a contrary interpretation would result in the virtual disinheritance of the testator's children from one-third of his estate to the benefit of non-relatives and the children of a hypothetical and then nonexisting second wife. Such a construction "ought not to be adopted upon language susceptible of other reasonable construction, especially when that construction will effectuate the testator's intent." *Tingier* v. *Woodruff,* 84 Conn. 684, 688, 81 A. 967 (1911). It cannot be presumed that the testator was without affection or regard for his natural children, especially since he provided that they would receive the entire remainder of his estate fol-

lowing the death of his first wife if he had not remarried. The fact that he provided for the possibility that he might remarry does not warrant a conclusion which would leave his natural children in a far worse position than had he not so provided.[2]

There is no error.

In this opinion the other judges concurred.

---

[2] If the testator had not made a provision for his second, hypothetical wife, it would have been clear that his second wife would be able to receive only a life interest of one-third of his estate. General Statutes § 46-12 provided that "[t]he right to such third shall not be defeated by any disposition of the property by will to other parties."