**Michael EWING, Plaintiff–Appellant, Cross–Appellee,**

v.

**Alvin RUML and Lynda Ewing as Executors of the Estate of Alexander Ewing, Defendants–Appellees,**

**Citytrust, Defendant–Appellee, Cross–Appellant.**

Nos. 17, 47, Dockets 89–7246, 89–7258.

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1989.

Decided Dec. 13, 1989.

William R. Horner (Horner & Isaacs, P.C., New York City of counsel), for plaintiff-appellant-cross-appellee.

Dion W. Moore (Williams, Cooney & Sheehy, Bridgeport, Conn., of counsel) for defendant-appellee-cross-appellant.

Before VAN GRAAFEILAND, MESKILL and KEARSE, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

On June 19, 1986, Michael Ewing ("Michael") brought the instant action against Citytrust alone in the United States District Court for the Southern District of New York, alleging that the Bank breached its fiduciary duty to him in the administration of two estates and three trusts. The estates in question were those of Michael's grandmother, Myra, and his grandfather, George. Citytrust and Michael's father, Alexander, were co-executors of both estates. The trusts in question were a testamentary trust created by Myra, of which Citytrust was the sole trustee, a testamentary trust created by George, of which Citytrust was co-trustee with Alexander, and an inter vivos trust created by George, of which Citytrust was the sole trustee.

When Citytrust moved to join Alexander's Estate as an additional defendant, Alvin Ruml and Lynda Ewing, as Executors of the Estate of Alexander Ewing, were included as defendants pursuant to stipulation. The action thereafter was transferred to the United States District Court for the District of Connecticut. Michael now appeals from Chief Judge Daly's dismissal of Michael's claims involving Myra's estate and trust and George's inter vivos trust. Citytrust cross-appeals from an $81,769.58 judgment against it on Michael's claim involving the George Ewing testamentary trust. Although Michael's notice of appeal is general in scope, the relief he seeks is limited to his claim against Citytrust. Alvin Ruml and Lynda Ewing, as Executors of the Estate of Alexander Ewing, have not appeared in this appeal. The sole issue before us then is the conduct of the Bank.

Myra died on January 22, 1967. George died on June 3, 1967, leaving an only son, Alexander. Myra's trust named Alexander as the income beneficiary, with the remainder upon his death going to Alexander's issue [Michael] if he survived. Citytrust, as co-executor with Alexander and as sole trustee, was given the power "[t]o invest and reinvest without restriction or limitation" and to hold and retain stocks, bonds or other securities "whether or not the same shall be an investment of the character deemed to be legal and proper for Trust investments under the laws of the State of Connecticut." Myra's estate was made up largely of common stocks. Because they produced only modest income, the Bank sold them and invested the proceeds in tax-exempt bonds which produced substantially higher income. The original trust corpus consisted of approximately $400,000 of these bonds.

George Ewing's inter vivos trust also consisted largely of common stocks. These stocks, having an approximate value of $1.5 million, were sold, and the proceeds invested mainly in bonds providing a higher rate of return. The income from this trust and so much of the principal "as may in the judgment of the Trustee be desirable to or for the benefit of [Alexander or Michael]" was to be paid to them "in such amounts and proportions as my said corporate Trustee in its sole and absolute discretion shall deem advisable from time to time without regard to equality of distribution."

The Trustee also was empowered "to invest and reinvest in any property or security" and "to make, retain or change any investment without liability on account thereof."

George Ewing's will named Citytrust and Alexander as co-executors and as co-trustees of a trust, the corpus of which was approximately $283,497. However, Alexander delegated his responsibilities as co-trustee to Alvin Ruml, a New York City stockbroker, and Ruml thereafter offered his investment counsel and advice to Citytrust. The will empowered the corporate Trustee to pay so much of the net income to Alexander and Michael "in such amounts and proportions as my said corporate Trustee in its sole and absolute discretion shall deem advisable from time to time without regard to equality of distribution." It also authorized the corporate Trustee "to invade the principal for any reason in its discretion for the benefit of [Alexander or Michael]".

Michael argued in the district court that the defendants breached their fiduciary duties to him by (1) engaging in an investment policy favoring income production over principal appreciation; (2) delegating investment strategy decisions to Alvin Ruml; and (3) distributing $111,000, the balance remaining in George's testamentary trust, to Alexander without Michael's knowledge or consent. Both sides moved for summary judgment. The district court granted summary judgment in favor of the defendants on the first two claims and in favor of Michael and against Citytrust on the third.

■ Before we can address the merits of the two appeals, we must determine whether the case comes to us in proper posture for review. The district court's disposition of the summary judgment motions is entitled "RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT." The decretal portion of this "RULING" provides that "partial summary judgment shall enter for the plaintiff only on the question of liability with regard to [the invasion of principal in the George Ewing testamentary trust]." With regard to Michael's remaining claims, the RULING provides that "partial summary judgment shall enter in favor of defendants Citytrust and the Estate of Alexander Ewing."

Citytrust moved for reconsideration of the portion of the district court's ruling that was in favor of Michael, and Michael moved for entry of final judgment and damages. On January 25, 1989, the district court denied Citytrust's motion for reconsideration and granted Michael's "application for damages ... to the extent of $55,-500 plus prejudgment interest...." The order stated in conclusion that "upon the entry of final judgment, this matter is hereby closed of record." The judgment, entered on February 10, 1989, referred simply to the court's January 25th "Ruling" on plaintiff's motion for final judgment and then stated, it is "ORDERED and ADJU[D]GED that judgment be and is hereby entered for the plaintiff in the amount of $81,769.58." This abbreviated judgment was signed and entered by the district court clerk.

Where a separate judgment thus is entered as required by Fed.R.Civ.P. 58, the preferred procedure is to make it self-sufficient and complete. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2785 at 15–16; *Reytblatt v. Denton,* 812 F.2d 1042, 1043–44 (7th Cir.1987). If this is done, it is readily apparent to all what relief has been granted and what has been denied and the date when this has occurred for purposes of appeal. *See Cardillo v. United States,* 767 F.2d 33 (2d Cir.1985). However, where, as here, the appeals are timely and the district court's disposition of the case is undisputed, we may accept the appeal and interpret the judgment in the light of the district court's opinions, findings and conclusions of law. *See Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 295, 63 S.Ct. 1070, 1071, 87 L.Ed. 1407 (1943); *National Railroad Passenger Corp. v. City of New York,* 882 F.2d 710, 713 (2d Cir.1989); *Security Mutual Casualty Co. v. Century Casualty Co.,* 621 F.2d 1062, 1066 (10th Cir.1980). Any other disposition would result in a spinning of wheels for no practical purpose. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381,

385, 98 S.Ct. 1117, 1120, 55 L.Ed.2d 357 (1978). Upon dismissal by this Court, the district court simply would enter a new judgment incorporating all the dispositive provisions of its summary judgment order, and review would be sought once again. *Id.* Accordingly, we treat the district court's disposition of the issues before it as a final dismissal of all claims made by Michael against the defendants, except that Michael was awarded judgment against Citytrust alone in the amount of $81,769.58 because of the distribution of principal to Alexander Ewing from the George Ewing testamentary trust. We affirm the district court's dismissal of the several claims that it found to be without basis. We vacate the $81,769.58 award against Citytrust and remand for further proceedings with respect to this claim.

## THE DISMISSED CLAIMS

■ In dismissing Michael Ewing's claims based on alleged improper investment policies, the district court correctly noted that the issue of the defendants' breach of fiduciary duty was a matter of state law. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where, as here, the interpretation of state law is made by a district judge sitting in that state, it is entitled to great weight and should not be reversed unless it is clearly wrong. *Lomartira v. American Automobile Ins. Co.,* 371 F.2d 550, 554 (2d Cir. 1967). Michael has not convinced this Court that the district court's reasoning is so flawed as to fail under this standard. Quite to the contrary, the lower court's decision on this issue is well reasoned and correct.

■ Both in its capacity as executor and trustee, Citytrust owed Michael a fiduciary obligation. *See Satti v. Rago,* 186 Conn. 360, 367, 441 A.2d 615 (1982); *O'Connor v. Chiascione,* 130 Conn. 304, 307–08, 33 A.2d 336 (1943); 45 Conn.Gen.Stat.Ann. § 45–100d(a) (West Supp.1989). Connecticut law generally requires that a fiduciary such as Citytrust act with the care of a prudent investor in managing estate assets. *United States Trust Co. v. Bohart,* 197 Conn. 34, 48, 495 A.2d 1034 (1985); *see also Jackson v. Conland,* 178 Conn. 52, 55 & n. 3, 420 A.2d 898 (1979); Conn.Gen.Stat.Ann. § 45–88 (West Supp.1989). Language in a will or trust agreement, however, may excuse such a fiduciary from the strictures of this rule and allow it a broader range of investment discretion than the rule otherwise would permit. *United States Trust Co. v. Bohart, supra,* 197 Conn. at 48, 495 A.2d 1034; *see also Jackson v. Conland, supra,* 178 Conn. at 55 & n. 3, 420 A.2d 898 (1979); *Reed v. Reed,* 80 Conn. 401, 409–10, 68 A. 849 (1908); Conn.Gen.Stat.Ann. § 45–88 (West Supp.1989). In such circumstances, courts may hold the fiduciary liable only where it abuses that discretion. *United States Trust Co. v. Bohart, supra,* 197 Conn. at 48, 495 A.2d 1034. Courts will not find such abuse unless the fiduciary has acted dishonestly or with improper motive, has failed "to use his judgment," or has "acted beyond the bounds of a reasonable judgment." *Restatement (Second) of Trusts* § 187, comment e (1959); *see also Gimbel v. Bernard F. & Alva B. Gimbel Foundation, Inc.,* 166 Conn. 21, 37, 347 A.2d 81 (1974).

Michael has not shown that Citytrust abused its discretion under any of these criteria. Although Michael argues that Citytrust should have followed a different investment strategy to better serve his interests as the remainderman of various trust assets, the district court correctly held that George's will did not require it to do so. Moreover, Michael has made no showing that Citytrust acted dishonestly, in bad faith, with improper motives, or in a grossly negligent manner in following a conservative investment policy emphasizing income over capital gains. We accordingly find, as did the court below, that Citytrust did not abuse its discretion in following the investment strategy of which Michael now complains.

The district court correctly rejected Michael's argument that Citytrust breached its fiduciary duty by delegating to Alvin Ruml its authority to control the investment policy of the Ewing trusts. The court found that, although Ruml and Citytrust

had a relationship and a variety of contacts, their interaction did not indicate a delegation of trust responsibilities. Michael does not seriously dispute that finding in this Court, and we see nothing in the record that warrants a contrary conclusion. Citytrust, as trustee, was entitled to consult advisors in making investment decisions. *See Restatement (Second) of Trusts* § 171 comment f (1959); *McClure v. Middletown Trust Co.*, 95 Conn. 148, 153–54, 110 A. 838 (1920). Its dealings with Ruml were nothing more than such consultation.

## THE MONETARY AWARD

■ As above stated, the George Ewing testamentary trust authorized Citytrust as trustee "to invade the principal for any reason in its discretion for the benefit of [Alexander] or [Michael]." The district court construed this clause to mean that principal could be invaded only for the personal needs of Alexander and Michael:

> The primary intent of the settlor in this instance appears to have been to provide the two income beneficiaries with a fund upon which they could draw income and invade principal as the need arose.

Proceeding from this premise, the district court held that payment of principal to Alexander was improper where Alexander's admitted intent was to use the money to help him provide support for his stepchildren. This interpretation of the trust provisions gave to the word "benefit" a meaning that is contrary to the overwhelming weight of legal authority.

In *Ferrigino v. Keasbey*, 93 Conn. 445, 106 A. 445 (1919), the Connecticut Supreme Court, contrasting the words "support" and "benefit", as used in Conn.Gen.Stat. § 5275, now in substance section 46b–37, said, quoting Webster's *New International Dictionary*, that "the word 'benefit' is defined to be 'whatever promotes prosperity and personal happiness; advantage; profit; good.'" *Id.* at 451.

This definition accords with that given the word "benefit" in most other states; *i.e.*, that it is more comprehensive than the word "support" and means anything that works to the advantage, gain or happiness of the recipient. *See, e.g., In re Emmons Will*, 165 Misc. 192, 195, 300 N.Y.S. 580 (1937); *In re Rachlin's Will*, 133 N.Y.S.2d 151 (1954); *Matter of Estate of Hixon*, 715 P.2d 1087, 1090 (Okla.1985); *Matter of Conrad*, 97 Ill.App.3d 202, 203, 52 Ill.Dec. 675, 422 N.E.2d 884 (1981); *Bird v. Newcomb*, 170 Va. 208, 216, 196 S.E. 605 (1938); *Matter of Estate of Krause*, 173 Wash. 1, 7–8, 21 P.2d 268 (1933); *Winthrop Co. v. Clinton*, 196 Pa. 472, 474, 46 A. 435 (1900). See also *Black's Law Dictionary* 200 (4th ed. 1968).

Indeed the word "benefit" is sufficiently broad that a bequest of all the property of a testator to his wife "for her own proper use and benefit, forever" has been construed to convey an estate in fee simple absolute. *Dei Cas v. Mayfield*, 199 Conn. 569, 573, 508 A.2d 435 (1986). "A gift to a person for his benefit means an absolute gift, and excludes the idea of a qualified or limited estate." *Crain v. Wright*, 114 N.Y. 307, 310, 21 N.E. 401 (1889). *See also Warren v. Webb*, 68 Me. 133, 135 (1878); *Stowell v. Hastings*, 59 Vt. 494, 497, 8 A. 738 (1887).

The word "benefit" has received a good deal of attention in tax litigation, where the extent of the power to invade principal on behalf of a trust beneficiary may determine who pays an estate tax. A power to invade principal that is limited by an ascertainable or measurable standard, *i.e.*, for support, maintenance, health, etc., is held not to be a general power of appointment for tax purposes. *See Henslee v. Union Planters National Bank & Trust Co.*, 335 U.S. 595, 597–600, 69 S.Ct. 290, 291–93, 93 L.Ed. 259 (1949); 26 U.S.C. § 2041(b)(1)(A). The cases uniformly hold, however, that a power to invade principal for the "benefit" of a trust beneficiary does not limit the beneficiary's power of invasion. *See De Oliveira v. United States*, 767 F.2d 1344, 1348 (9th Cir.1985); *Old Colony Trust Co. v. United States*, 423 F.2d 601, 604 (1st Cir.1970); *National Bank of Commerce v. United States*, 369 F.Supp. 990, 992 (W.D.Tex. 1973), *aff'd*, 491 F.2d 1271 (5th Cir.1974); *Newton Trust Co. v. Comm'r*, 160 F.2d

175, 179 (1st Cir.1947); *Helvering v. Evans,* 126 F.2d 270, 272 (3d Cir.), *cert. denied,* 317 U.S. 638, 63 S.Ct. 30, 87 L.Ed. 514 (1942). The following language from *National Bank, supra,* 369 F.Supp. at 992, is illustrative:

> Considering plaintiff's contentions in order, the Court begins the search for an ascertainable standard with the trust instrument. It provides only one express standard, i.e. "benefit [of decedent's wife]." This standard "is so loose that the trustee is in effect uncontrolled."

(Quoting *Old Colony Trust Co., supra,* 423 F.2d at 604).

Alexander Ewing was spending about $5,000 per month to support his stepchildren, who were remaindermen under the George Ewing testamentary trust. Alexander requested that the $111,000 be withdrawn for him because it would take care of two years of these "expenses". The Bank determined that it would be to Alexander's benefit to take the money for this purpose out of the testamentary trust rather than the inter vivos one, because it would give Alexander about a $51,000 tax loss which he could use on liquidation. We hold that, under the foregoing circumstances, the challenged withdrawal was for Alexander's benefit. The issue of Alexander's "need" for the money therefore was irrelevant. Indeed, because Alexander was a multi-millionaire, having inherited more than $2 million from his parents alone, a limitation of trust payments to him based solely on need hardly could have been within the contemplation of his parents when they adopted the trust language permitting withdrawals for his "benefit".

The $81,769.58 award is vacated, and the issue of liability on this claim is remanded to the district court for further consideration. Since the several "irregularities" that the district court found to support this award were premised upon its erroneous legal finding of unlawfulness, we believe that the district court should go back to square one with regard to these alleged irregularities and reconsider them on a full record interpreted in the light of proper legal principles. In other words, before determining whether Citytrust is liable on this claim, the district court should permit a full development of all the pertinent facts.

CONCLUSION

The district court's dismissal of all of Michael Ewing's claims against Citytrust except that of invasion of principal in the George Ewing testamentary trust is affirmed. The award of $81,769.58 against Citytrust in connection with the invasion of principal in the George Ewing testamentary trust is vacated, and this issue is remanded to the district court for further proceedings consistent with this opinion.