THE CANAAN NATIONAL BANK, EXECUTOR (ESTATE OF ELSIE E. JUNOD) *v.* MARIE E. PETERS ET AL. (13930)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued December 13, 1990—decision released February 5, 1991

*Jo-Ann L. Bowen,* with whom, on the brief, was *Edward F. Spinella,* for the appellant (named defendant).

*J. Michael Sconyers,* with whom, on the brief, was *Keith E. Krusz,* for the appellee (defendant Alexander H. McPhee, Sr.).

GLASS, J. The sole issue in this will construction case is whether the testatrix, Elsie Junod, intended a provision in her will concerning the offer of certain property for sale to be a mere precatory suggestion or, rather, a mandatory directive. The trial court, having found the will to be ambiguous, determined that the testatrix intended the provision to be mandatory. Although we conclude that the intent of the testatrix was unambiguously expressed in her will, we too conclude that she intended the provision to be mandatory and now affirm the judgment of the trial court.

The following facts are undisputed. The testatrix executed her will on November 9, 1977, naming her niece, the named defendant, Marie E. Peters, as the residuary legatee. The testatrix died approximately nine years later, on March 10, 1986. The only disputed pro-

vision in her will is the second of four paragraphs, the sole provision pertaining to the son of the testatrix's cousin, the defendant, Alexander H. McPhee, Sr. The paragraph provides: "SECOND: I wish my home on Twin Lakes Road, Salisbury, Connecticut, together with its contents and all the land connected with same, to be offered for sale to my cousin [sic] Alexander Hector McPhee, Sr. of 89 The Waterway, Plandome Heights, Manhasset, L.I., New York 11030. I am willing to let him purchase it for the sum of Ten thousand ($10,000) Dollars. Only after his refusal in writing to do so is it to be placed on the market for sale."[1]

On October 27, 1986, in accordance with the second paragraph of the will, McPhee tendered the stated

---

[1] The will provides in its entirety:

"I, Elsie E. Junod of the Town of Salisbury, County of Litchfield and State of Connecticut, being of lawful age and of sound mind and memory and judgment, do hereby make, publish and declare this to be my Last Will and Testament, hereby revoking all previous Wills and Codicils by me made.

FIRST: I order my executor, hereinafter named, to pay all my just debts and funeral expenses as soon as it is convenient, after my decease. I also order that my name and the date of my death be added to the names on the headstone on the grave of my father and mother in the Evergreens Cemetery in Brooklyn, N.Y. where I too am to be interred.

SECOND: I wish my home on Twin Lakes Road, Salisbury, Connecticut, together with its contents and all the land connected with same, to be offered for sale to my cousin [sic] Alexander Hector McPhee, Sr. of 89 The Waterway, Plandome Heights, Manhasset, L.I., New York 11030. I am willing to let him purchase it for the sum of Ten thousand ($10,000) Dollars. Only after his refusal in writing to do so is it to be placed on the market for sale.

THIRD: I direct that the proceeds of the above property and other real and personal property wheresoever situate and whatsoever it shall be or to which I may be entitled at the time of my death be distributed as follows:

A. To The Little Guild of Saint Francis in West Cornwall, Connecticut, I leave the sum of One Thousand ($1,000) Dollars.

B. The remainder of my estate I leave to my niece Marie E. Peters of 439 Langley Avenue, West Hempstead, N.Y. 11552.

FOURTH: I appoint the Canaan National Bank, Main Street Canaan, Connecticut to be executor of this my Last Will and Testament and direct that no bond or other security be required in order to secure the faithful performance of its duties as such."

$10,000 purchase price for the Twin Lakes Road property (Twin Lakes) to the executor of the will, the plaintiff, Canaan National Bank (executor).[2] Confronted with conflicting claims regarding the construction of the will, the executor commenced the underlying action seeking a judicial determination of whether the second paragraph of the will should be construed as a mandatory directive to offer Twin Lakes for sale to McPhee, and if so, at what price.[3] Peters filed an answer to the executor's complaint admitting that Twin Lakes should be offered for sale to McPhee, but claiming that it should be offered to him at the price of $47,000, its appraised fair market value. McPhee counterclaimed for an order directing the executor to convey Twin Lakes to him at the price of $10,000 stated in the will.

Reading the will in its entirety, the trial court found: "While certain language in this will may appear to be precatory at first glance, it is actually mandatory language when viewed in the context of the paragraph in which it appears. The testatrix specifically directs that the property be offered for sale to . . . McPhee. To underscore the imperative nature of this order of the testatrix, she further directs that such property not be offered for outside sale until McPhee has refused in writing to purchase the property at the price specified in the will. Therefore, the language at issue is best categorized as mandatory even though a portion of the testatrix's command is phrased in language that is ordinarily precatory." The court accordingly rendered judgment that McPhee was entitled to purchase Twin Lakes for the price of $10,000 stated in the will, and

---

[2] The executor is not a party to this appeal.

[3] The executor also sought a determination of whether, if McPhee chose not to purchase the Twin Lakes property, it must await McPhee's written refusal before selling the property on the open market, and in addition, what value should be placed upon the property for purposes of succession tax allocation.

that Twin Lakes was not to be offered for sale on the open market until McPhee refused in writing to purchase it for that price.[4]

Peters appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023. Peters now challenges the court's legal conclusion that the intent of the testatrix, derived solely from the four corners of the will, was that Twin Lakes be offered for sale to McPhee for the price of $10,000. Both Peters and McPhee agree that the intent of the testatrix is unambiguously expressed in the language of the will, although each claims that the language used by the testatrix supports his or her respective position.

Peters claims that the words used by the testatrix in the second paragraph of the will are precatory, that is, "words whose ordinary significance imports entreaty, recommendation, or expectation rather than any mandatory direction . . . ." 80 Am. Jur. 2d, Wills § 1168. Particularly, she points to the words "wish" and "willing" used in the first and second sentences of the second paragraph as indicative of the testatrix's intent to recommend or suggest that the property be sold to McPhee for $10,000, but to leave the ultimate

---

[4] Because the court initially found that it "cannot say as a matter of law that there is no ambiguity" in the second paragraph of the will, the court admitted the testimony of Peters regarding the circumstances attendant to the execution of the will. As an alternate ground for its decision, the court determined that the testimony offered was insufficient to establish the testatrix's donative intent that Peters be the primary beneficiary of the will. Neither party claims to have been harmed by the court's admission of extrinsic evidence, and, therefore, we need not consider the propriety of its admission, or whether the evidence favors the position of either party. Moreover, since both parties agree that the court's legal conclusion regarding the intent of the testatrix as expressed in the will is the subject of this appeal, we decline to address Peters' claim that the court's alleged imposition of the burden of proof upon her in arriving at its alternate factual conclusion constitutes plain error under Practice Book § 4185.

decision as to the disposition of the property within the executor's prudent discretion. Peters buttresses her claim by comparing the words "wish" and "willing" to the imperative words "order" and "direct" used by the testatrix in the first and third paragraphs of the will, respectively.[5] She also claims that construing the second paragraph as a precatory recommendation would be consistent with the general testamentary scheme of the testatrix, that being that Peters would receive the bulk of the estate, less debts, funeral expenses, and a single charitable gift, and McPhee would receive nothing if he did not desire to purchase Twin Lakes. We disagree.

" ' "The construction of a will presents a question of law to be determined in light of facts which are found by the trial court or are undisputed or indisputable." . . . ' " (Citations ommitted.) *Connecticut National Bank & Trust Co.* v. *Chadwick,* 217 Conn. 260, 266, 585 A.2d 1189 (1991). Since the issue before us concerns the court's legal conclusion regarding the intent of the testatrix as expressed solely in the language of her will, we must decide that issue by determining, de novo, whether that language supports the court's conclusion. See id., 266–67; *Wyman* v. *Roesner,* 439 A.2d 516, 523 n.6 (D.C. App. 1981).

Our primary objective in construing the second paragraph of the testatrix's will is to ascertain and effectuate her intent. *Dei Cas* v. *Mayfield,* 199 Conn. 569, 572, 508 A.2d 435 (1986); *Hartford National Bank & Trust Co.* v. *Thrall,* 184 Conn. 497, 502, 440 A.2d 200 (1981); *Kimberly* v. *New Haven Bank N.B.A.,* 144 Conn. 107, 113, 127 A.2d 817 (1956). In searching for that intent, we look first to the precise wording employed by the testatrix in her will; *Hartford National Bank*

---

[5] See footnote 1, supra.

& *Trust Co.* v. *Thrall,* supra; *Hartford National Bank & Trust Co.* v. *Birge,* 159 Conn. 35, 42–43, 266 A.2d 373 (1970); see *First National Bank of Atlanta* v. *United States,* 634 F.2d 212, 214 (5th Cir. 1981); for the meaning of the words as used by the testatrix is the equivalent of her legal intention—the intention that the law recognizes as dispositive. *Wisely* v. *United States,* 893 F.2d 660, 665 (4th Cir. 1990). "The question is not what [s]he meant to say, but what is meant by what [s]he did say." *Connecticut Junior Republic* v. *Sharon Hospital,* 188 Conn. 1, 20, 448 A.2d 190 (1982); see *Hartford National Bank & Trust Co.* v. *Thrall,* supra; *Warren* v. *First New Haven National Bank,* 150 Conn. 120, 123, 186 A.2d 794 (1962); see also *Hunter* v. *United States,* 597 F. Sup. 1293, 1295 (W.D. Pa. 1984).

The meaning of the words used by the testatrix in the second paragraph of her will is not to be deduced by extracting and examining the words in artificial isolation. *Lockwood* v. *Killian,* 179 Conn. 62, 70, 425 A.2d 909 (1979); *Colonial Bank & Trust Co.* v. *Stevens,* 164 Conn. 31, 36–37, 316 A.2d 768 (1972); see *Adams* v. *United States,* 401 F. Sup. 1142, 1151 (D. Kan. 1975); *Read* v. *Legg,* 493 A.2d 1013, 1016 (D.C. App. 1985); *First National Bank of Florida* v. *Moffett,* 479 So. 2d 312, 313 (Fla. App. 1985). The words must be interpreted in light of their context within the second paragraph, and with reference to the will in its entirety. *Dei Cas* v. *Mayfield,* supra; *Hartford National Bank & Trust Co.* v. *Thrall,* supra; see *Estate of Bruning* v. *C.I.R.,* 888 F.2d 657, 659 (10th Cir. 1989); *Estate of McMillan* v. *C.I.R.,* 670 F.2d 788, 791 (8th Cir. 1982). " ' "Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect." ' " *Hartford National Bank & Trust Co.* v. *Thrall,* supra, 506; see *Independence Bank Waukesha (N.A.)* v. *United States,*

761 F.2d 442, 444 (7th Cir. 1985); *Greene* v. *United States,* 447 F. Sup. 885, 897 (N.D. Ill. 1978); *Connecticut General Life Ins. Co.* v. *Peterson,* 442 F. Sup. 533, 537 (W.D. Mo. 1978); *Estate of Sweet,* 519 A.2d 1260, 1264 (Me. 1987). "A court may not stray beyond the four corners of the will where the terms of the will are clear and unambiguous." *In re Estate of Tashjian,* 375 Pa. Super. 221, 229–30 n.3, 544 A.2d 67 (1988); see *Connecticut Junior Republic* v. *Sharon Hospital,* supra, 9.

While the words "wish" and "willing" in the first and second sentences of the second paragraph of the testatrix's will are "primarily precatory in [their] significance"; *Burley* v. *Maguire,* 127 Conn. 242, 245, 16 A.2d 358 (1940); "[t]hese words have no invariable construction." *Cumming* v. *Pendleton,* 112 Conn. 569, 574, 153 A. 175 (1931). A particular provision in a will may be mandatory although couched in language which is not imperative in form; id., 573; "and if, from the whole instrument, it can be seen that it expresses the definite will of the [testatrix], it is to be given that effect . . . ." *Burley* v. *Maguire,* supra; see *Davis* v. *Davis,* 471 A.2d 1008, 1009–10 (D.C. App. 1984); *First United Methodist Church* v. *Allen,* 557 S.W.2d 175, 177 (Tex. Civ. App. 1977); accord *Matter of Estate of Nelson,* 274 N.W.2d 584, 588 (S.D. 1978). In other words, "[i]f the intent of the [testatrix] be apparent, effect will be given to it, though [s]he may have used inappropriate terms to attain [her] object." *Doe* v. *Watson,* 49 U.S. (8 How.) 263, 272, 12 L. Ed. 1072 (1850).

Moreover, precatory words frequently have been construed as mandatory when addressed to an executor, rather than to a devisee, or to one who is both an executor and a devisee if the language addresses the person as a devisee. *Davis* v. *Davis,* supra, 1009; *In re Estate of Fresia,* 390 So. 2d 176, 178 (Fla. App. 1980); *In re Moody,* 155 Me. 325, 329, 154 A.2d 165 (1959);

accord *Goetz* v. *Bank of Martinsburg,* 140 W. Va. 422, 438, 84 S.E.2d 759 (1954). "It has also been held that where [precatory] language is expressive of a desire or recommendation as to the direct disposition of the estate as distinguished from the use which the [testatrix] desires the legatee or devisee to make of it, it operates as a bequest or devise and is obligatory." *Cumming* v. *Pendleton,* supra, 575; see *Matter of the Estate of Martin,* 32 App. Div. 2d 849, 850, 300 N.Y.S.2d 751 (1969); *Corbett Estate,* 430 Pa. 54, 57–58, 241 A.2d 524 (1968); accord *Sturdevant* v. *SAE Warehouse, Inc.,* 270 N.W.2d 794, 800 (N.D. 1978); cf. *Anders* v. *Anderson,* 246 N.C. 53, 57, 97 S.E.2d 415 (1957); *Matter of Estate of Nelson,* supra, 587; *Saunders* v. *Callaway,* 42 Wash. App. 29, 33, 708 P.2d 652 (1985). The reasoning behind this general rule has been stated: "[A]s the testator has the right to make such disposition as he wishes of his own property, the expression of that wish is equivalent to a command . . . ." *Cumming* v. *Pendleton,* supra.

In this case, the precatory words "wish" and "willing" are addressed to the executor, and concern the direct disposition of Twin Lakes rather than the use to be made of the property. We are mindful, however, that because each testatrix manifests her intent in unique testamentary language, cases assigning significance to such factors are instructive, but not necessarily controlling. See *Hartford National Bank & Trust Co.* v. *Thrall,* supra, 507–508; *Hartford National Bank & Trust Co.* v. *Harvey,* 143 Conn. 233, 243, 121 A.2d 276 (1956); *Wyman* v. *Roesner,* supra, 520. In addition to the implications of such factors, an examination of the precatory language in its context within the second paragraph of the will unambiguously reveals that the testatrix intended that Twin Lakes be offered for sale to McPhee for the stated price of $10,000.

The import of the precatory words used by the testatrix in the first and second sentences of the second paragraph is clarified by the third sentence of the paragraph, with which the first two sentences must be read in conjunction, as arranged by the testatrix. In the third sentence, the testatrix commands in mandatory terms: "Only after his refusal in writing to do so is it to be placed on the market for sale." No discretion is left to the executor in carrying out this directive. Moreover, had the testatrix intended merely to suggest that Twin Lakes be offered for sale to McPhee, it certainly would have been unnecessary for her to add the third sentence, which meticulously safeguards the right of first refusal granted to McPhee in the first two sentences by requiring his written refusal to be given before the property is otherwise sold.

Finally, the will is devoid of any indication that the testatrix intended Twin Lakes to be offered for sale to McPhee for a price equivalent to its fair market value. There is only the stated price of $10,000 in the second sentence of the second paragraph. If the testatrix had intended that Twin Lakes be sold to McPhee for its fair market value in order to enlarge her residuary estate for the benefit of Peters, it would have been a simple matter for her to have expressed that intention in her will. Accord *Rosa* v. *Palmer,* 177 Conn. 10, 16, 411 A.2d 12 (1979). Instead, she left the $10,000 price term intact and made no evident effort to modify it to reflect the fluctuating fair market value of Twin Lakes, or for that matter, its contents, over the passage of some nine years from the date she had executed her will to the date of her death.

We therefore conclude that, notwithstanding the precatory language used in the first and second sentences of the second paragraph of the testatrix's will, the imperative directive in the third sentence of the

paragraph evinces her true intent that the entire paragraph be mandatory. In accordance with the manifest intent of the testatrix, the entire paragraph must be given mandatory effect.

The judgment is affirmed.

In this opinion the other justices concurred.