THOMAS E. MANGINES, EXECUTOR (ESTATE OF ALFRED J. JOLSON) ET AL. *v.* LILLIAN MCCARTHY ERMISCH, EXECUTRIX (ESTATE OF CATHERINE L. MCCARTHY) ET AL.*

| Superior Court | Judicial District of Waterbury | File No. CV950125739 |

Memorandum filed February 3, 1997

*Mangines & Mangines*, for the plaintiffs.

*Tinley, Nastri, Reneham & Dost*, for the defendants.

PELLEGRINO, J. This is an appeal pursuant to General Statutes § 45a-186, by the plaintiff, attorney Thomas

---

* Affirmed. *Mangines* v. *Ermisch*, 243 Conn. 510, 704 A.2d 1174 (1998).

E. Mangines, the coexecutor of the estate of Bishop Alfred J. Jolson, S. J. (Jolson) from an order issued by the Probate Court judge for the district of Southbury, *Flaherty, J.*, in connection with the construction of the residuary clause of the last will and testament of the deceased, Catherine L. McCarthy (testatrix).

The testatrix, a resident of Southbury, died on January 14, 1993. In the residuary clause of her last will and testament, dated February 25, 1991, and duly admitted to probate, the testatrix provides the following: "Sixth: All the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, of whatever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this will, I give, devise and bequeath to the Bishop of Reykjavik (Iceland), who is presently the Most Reverend Alfred J. Jolson, S. J., c/o Jesuit Mission Bureau, St. Joseph University, 5600 City Avenue, Philadelphia, Pennsylvania 19131, or his successor, for Church needs."[1]

At the time of the testatrix' death, Jolson was alive. On March 10, 1994, however, during the probate of the testatrix' estate, but prior to the estate's distribution, Jolson died. Upon Jolson's demise, the executors of his estate sought a partial distribution as the claimed beneficiary under article sixth of the testatrix' will. Thereafter, the executors of the testatrix' estate applied to the Probate Court for a construction of the residuary clause.

On February 24, 1995, the Probate Court ruled that the distribution of the testatrix' residuary estate "be to the Bishop of Reykjavik, whoever that may be at the

---

[1] The testatrix' will contains two articles entitled sixth; the first being on page six of the will, the second on page seven. In the present proceeding, the court deals with only the first article sixth, as the latter is not contested.

time of the distribution in his capacity and as a representative of the Church, for the needs of the Church." Thereafter, on March 20, 1995, the Probate Court authorized the plaintiff to file an appeal of its decision to the Superior Court. This appeal followed.

General Statutes (Rev. to 1995) § 45a-186 provides in pertinent part that "[a]ny person aggrieved by any order, denial or decree of a court of probate in any matter, unless otherwise specifically provided by law, may appeal therefrom to the superior court for the judicial district in which such court of probate is held . . . ."

"[T]he existence of aggrievement depends upon whether there is a possibility, as distinguished from a certainty, that some legally protected interest which [an appellant] has in the estate has been adversely affected." (Internal quotation marks omitted.) *Appeal from Probate of Bencivenga*, 30 Conn. App. 334, 336–37, 620 A.2d 195 (1993), aff'd, 228 Conn. 439, 636 A.2d 832 (1994); *Erisoty's Appeal from Probate*, 216 Conn. 514, 520, 582 A.2d 760 (1990); see also *O'Leary* v. *McGuinness*, 140 Conn. 80, 83, 98 A.2d 660 (1953).

Based on the evidence presented at trial and contained in the record, the court finds, for purposes of this appeal, that the plaintiff is aggrieved.

"An appeal from probate is not so much an 'appeal' as a trial de novo with the Superior Court sitting as a Probate Court and restricted by a Probate Court's jurisdictional limitations." *Gardner* v. *Balboni*, 218 Conn. 220, 225, 588 A.2d 634 (1991). "An appeal from a probate order or decree to the Superior Court is not a civil cause of action. It has no more of the ordinary attributes of a civil action than the original proceedings in the court of probate." *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 53, 534 A.2d 1223 (1987); *Slattery* v. *Woodin*, 90 Conn. 48, 50, 96 A. 178 (1915).

"The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. . . . Thereafter, upon consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." (Citations omitted; internal quotation marks omitted.) *Kerin* v. *Stangle*, 209 Conn. 260, 264, 550 A.2d 1069 (1988); *Bristol* v. *Brundage*, 24 Conn. App. 402, 407, 589 A.2d 1 (1991).

The question presented in the present appeal is whether the testatrix' residuary bequest in article sixth is a bequest to the bishop of Reykjavik, the individual, or is a charitable bequest to the bishop in his official capacity as representative of the church, for the use and benefit of the church. It is clear to the court that it is the latter.

The court must "ascertain and effectuate" the testatrix' intent. *Canaan National Bank* v. *Peters*, 217 Conn. 330, 335, 586 A.2d 562 (1991); *Dei Cas* v. *Mayfield*, 199 Conn. 569, 572, 508 A.2d 435 (1986); *Hartford National Bank & Trust Co.* v. *Thrall*, 184 Conn. 497, 502, 440 A.2d 200 (1981). "In seeking that intent, the court looks first to the will itself and examines the words and language used in the light of the circumstances under which the will was written." (Internal quotation marks omitted.) *Dei Cas* v. *Mayfield*, supra, 572. Our Supreme Court has stated that "the question is not what [the testatrix] meant to say, but what is meant by what [she] did say." *Connecticut Junior Republic* v. *Sharon Hospital*, 188 Conn. 1, 20, 448 A.2d 190 (1982).

The language employed by the testatrix in article sixth makes clear that her residuary estate is to go to

the bishop of Reykjavik, whoever occupies that office, and is to be used not for the bishop's benefit, but for the benefit of the church he represented. It is not disputed that the church referred to by the testatrix is the Roman Catholic Church of the diocese of Reykjavik, Iceland, represented by the bishop of Reykjavik.

"A court may not stray beyond the four corners of the will where the terms of the will are clear and unambiguous." (Internal quotation marks omitted.) *Canaan National Bank* v. *Peters*, supra, 217 Conn. 337. "Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect." (Internal quotation marks omitted.) *Hartford National Bank & Trust Co.* v. *Thrall*, supra, 184 Conn. 506.

In articles third, fourth and fifth of the testatrix' will are thirty-five individual bequests. In reading these provisions, it is apparent that the testatrix understood the appropriate method of drafting bequests to individual beneficiaries. Moreover, only in the contested article sixth does the testatrix employ the words "or his successor." If the testatrix intended that her residuary estate go to Jolson in his individual capacity, she could have also named him as a beneficiary. She did not do so.

"[W]here a testator leaves property to a designated person who is the holder of an office in a charitable institution, he may thereby manifest an intention that the property should be applied to the purposes of the institution rather than that the legatee should take it for his own benefit." 4A A. Scott & W. Fratcher, Trusts (4th Ed. 1989) § 351, p. 54. Additionally, "[e]xcept where expressly provided by the terms of the will, a gift to the officials of a religious organization will generally be construed as a gift to the organization, and not to the officials personally, but will be ordered paid to the proper officials." 95 C.J.S. 1015–16, Wills § 689

(1957). The court's construction of the terms of the testatrix' will is in accordance with precedent long ago established by our Supreme Court. "Wardens and vestry of Episcopal societies are the known and recognized representatives and committee of such societies; and any bequest to such wardens and vestry, is a bequest to the society itself, or to them as trustees for its use." *Wardens & Vestry of Trinity Church* v. *Hall*, 22 Conn. 125, 132 (1852).

In the present case, the terms of this will are clear and unambiguous and the court construes the document as written. See *Bank of Boston Connecticut* v. *Brewster*, 42 Conn. Sup. 474, 483, 628 A.2d 1354 (1992). The bishop of Reykjavik is the known and recognized representative of the Catholic Church in Reykjavik, Iceland. The language used in article sixth manifestly expresses the testatrix' intentions that the bequest go to the bishop "or his successor" as a representative of the Catholic Church of Iceland, in trust, to be used for "Church needs." It is clear that the testatrix' charitable bequest was to the church, and not to Jolson individually.

Accordingly, the plaintiff's appeal is dismissed.