207 A.2d 286.

INDUSTRIAL NATIONAL BANK OF RHODE ISLAND *et al., Ex'rs.* *vs.* RHODE ISLAND HOSPITAL *et al.*

FEBRUARY 19, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a bill in equity for the construction of and instructions in relation to the will and an inter vivos trust of Herbert G. Townsend, late of the city of Warwick, hereinafter referred to as the decedent. The complainants are Industrial National Bank of Rhode Island as it is a coexecutor and cotrustee under that will and the sole trustee under that trust, and Marie Ann Townsend, the decedent's widow, both as a coexecutor and cotrustee under that will and individually, having joined in the suit in the last-named capacity after arguments in and pursuant to permission granted by this court. The coexecutors and cotrustees under the will and the sole trustee under the inter vivos trust are hereinafter collectively referred to as the fiduciary complainants.

The respondents are Rhode Island Hospital, The Providence Lying-In Hospital, and St. Joseph's Hospital, all lo-

cated in the city of Providence, and all corporations organized and operated exclusively for charitable or scientific purposes. They are hereinafter collectively referred to as the respondent hospitals. The attorney general is also a party respondent. Each of the respondents answered the bill and concurred in the requests for construction and instructions. After the cause was heard in the superior court and was ready for hearing on the final decree that court, pursuant to G. L. 1956, §9-24-28, certified the cause to this court for our determination.

On January 2, 1929 decedent created an inter vivos trust of which complainant Industrial National Bank is now acting as trustee. That trust was several times amended. Other than for a reservation of income to the decedent during his lifetime, the material dispositive provisions of that instrument and of the residuary estate under the will, which was left in trust, are substantially the same. The net earned income is directed to be paid to or applied for the benefit of decedent's wife, if she survives him, and upon her death or upon his death if she predeceases him, it is provided that 5 per cent of that income shall each year be added to the principal which is to be maintained perpetually in trust and that the balance shall be paid annually in equal shares to the respondent hospitals and their respective successors, if any, for the support of their charitable work. Under each instrument, the fund to be held in perpetual trust is designated as the Townsend Fund and hereinafter reference to those funds collectively shall be by that designation.

Death came to the decedent on July 25, 1960 and his wife survived him. In due course, after the will was probated, the executors filed a United States tax return for the estate and paid an estate tax of about $106,000. In that return almost $1,000,000 was deducted from the gross estate on the ground that the remainder interests of the respondent hospitals were charitable and not subject to diversion for

noncharitable purposes. That deduction was, for reasons to which we will hereinafter refer, disallowed and after payment of an assessed deficiency of approximately $350,000 including interest, the executors' claim for a refund was denied.

Whether the executors are entitled to a refund of the deficiency is determinable only in a suit by them against the United States of America in the federal courts and their right to recover will, at least in part, depend upon the construction given to clauses eighth, ninth and tenth of the will and paragraphs 4, 9(b) and 10 of the inter vivos trust. The reason that the fiduciary complainants bring this bill is to determine whether they are justified in bringing such a suit.

The threshold question is whether the cause is properly before us. It arises because all the beneficiaries under the will—the respondent hospitals and the complainant wife in her individual capacity— as well as the fiduciary complainants suggest substantially the same construction and instructions. Notwithstanding that posture, all the parties before us, respondents and complainants alike, contend either that this is in the nature of an adversary proceeding, the adversary being the commissioner of internal revenue or, in the alternative, that our jurisdiction should be exercised because the issues are of sufficient importance to the administration of the estate and trust as to justify our consideration.

Consistent with their position that the commissioner was their adversary, but recognizing that he was not amenable to process in this cause, the complainant executors, patterning their procedure upon that which the parties advise us was followed in *Channing* v. *Hassett*, 200 F.2d 514, notified the acting chief counsel of the internal revenue service of the commencement of this proceeding, sent him a copy of the bill of complaint and invited him to seek participation

as amicus curiae in the proceedings both before this court and the superior court. Their invitation was declined on the ground that the suit was not "by or against the United States or against the Commissioner of Internal Revenue * * *." That the interests of the commissioner are antithetical to those of the parties before us is clear for if the construction of the instruments urged at length both in briefs and in oral arguments is correct, it may well lend force to the contentions the executors will make before a federal court in a suit for a refund.

Whatever may be the merits of these and other arguments advanced to sustain the contention that this is in effect an adversary proceeding need not, however, be determined because in our opinion the issues warrant consideration even if the proceeding is nonadversary. There is precedent for our action. *Industrial Trust Co.* v. *President and Fellows of Harvard College,* 69 R. I. 317; *Duke* v. *Allen,* 48 R. I. 127; *Petition of Bailey,* 13 R. I. 543. In those cases, which were in postures similar to that of the instant cause, either construction or instructions or both were sought. While jurisdiction was exercised, no criteria were suggested as to when propriety permits action notwithstanding that both the complainants and the respondents contended for identical construction. We similarly refrain. We decide only that in the circumstances of this proceeding it is appropriate that we act.

Among the circumstances which influence us are the following. In any suit in the federal court for a refund the ultimate decision may hinge on whether the sums set aside in the Townsend Fund are ascertainable. That issue is not one of federal tax law, but of how the instruments are construed, and if now resolved by us may be given binding force by the federal courts. *Blair* v. *Commissioner of Internal Revenue,* 300 U. S. 5; *Freuler* v. *Helvering,* 291 U. S. 35; *Plunkett* v. *Commissioner of Internal Revenue,* 118 F.2d

644: See also Cahn, Local Law in Federal Taxation, 52 Yale L. J. 799, 819. Not to construe the instruments in those circumstances and when the parties have not resorted to the formalistic approach of creating a cause where there are adversary parties in the customary sense, as well they could have, seems inappropriate.

We are not deterred by the possibility that the federal court may find this suit collusive "in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right" to an increased estate tax. *Freuler* v. *Helvering, supra,* at page 45. We feel, rather, that the federal court may find that "A decision on pertinent state law is to be welcomed at any time." *Commerce Oil Refining Corp.* v. *Miner,* 303 F.2d 125, 128.

We turn now to paragraph 4 of the inter vivos trust and clause eighth of the will.

Paragraph 4 of the inter vivos trust provides:

"Said trustee shall also have *power and authority, according to its judgment of what is right and proper under the circumstances, (without being bound by any court decision as to any other trust instrument),* to treat any or all dividends, whether in cash or in stock and whether ordinary or extraordinary, and any or all rights to subscribe for new stock, and any or all money or other things of value received by said trustee by virtue of its legal ownership of said trust fund, as income or principal, and to charge and apportion expenses and also losses, if any, to income or principal and to bind all beneficiaries hereunder in so doing." (italics ours)

Clause eighth of the decedent's will is substantially the same and reads as follows:

"Said trustees shall also have *power and authority, according to their judgment of what is right and proper under the circumstances, (without being bound by any court decision as to any other trust instrument),* to charge any or all premiums on investments against

principal or income and to credit any or all discounts on investments to principal or income and to treat any or all dividends, whether in cash or in stock and whether ordinary or extraordinary, and any or all rights to subscribe for new stock, and any or all money or other things of value received by said trustees by virtue of their legal ownership of said trust fund, as income or principal and to charge and apportion expenses and also losses, if any, to income or principal, and to bind all beneficiaries hereunder in so doing." (italics ours)

While complainants in their bill present no precise question of the extent of their power to allocate a particular receipt or apportion a specific expense or loss, they ask us to determine whether the discretionary power to do so permits an exercise thereof unfettered by any standards or the possibility of judicial review. Their questions are put generally because the district director of internal revenue premised his denial of the executors' claim for a refund on the ground that the value of the charitable remainders "is not presently ascertainable" and among the reasons for that conclusion advanced the following:

"* * * the trustees are empowered to treat any and all dividends, whether in cash or stock, whether ordinary or extra-ordinary, and any or all money or things of value received by said trustees by virtue of legal ownership of the trust fund as income or principal, and to charge and apportion expenses and losses, if any, to income or principal, wherefor the value of the benefits to be received by charity cannot be mathematically computed or ascertained."

The first question then is the extent of the fiduciary complainants' power to allocate income and apportion expenses and losses. Discretionary clauses such as those in issue are of comparatively recent origin. They are designed to give flexibility to the administration of trusts, to eliminate litigation where the law is unsettled, and to authorize the designated trustee to favor *within the limitations of the instru-*

*ment* either the life tenant or the remainderman. Note, 50 Yale L. J. 1467.

Frequently the scope of a discretionary power is extended by the use of such adjectives as "absolute," "unconditional," "complete," or "full," or by a clause which confers upon the trustee power "to determine whether money or property received by him is principal or income, without being answerable to any person for the manner in which he shall exercise that discretion" or "to decide finally any question that may arise as to what constitutes income and what principal."

Even though if literally interpreted powers couched in such broad and absolute terms may appear to impose no limitation upon the action of a fiduciary and to leave a court powerless to intervene or to substitute its judgment for that of the fiduciary, they have not generally been so construed. Bogert, Trusts & Trustees (2d ed.) §560, p. 118 et seq., §816, p. 292 et seq.; 2 Scott, Trusts (2d ed.) §187, p. 1374; Loring, A Trustee's Handbook (5th ed.) §34, p. 106. Instead, unless the authority granted is so broad as to be void because repugnant to the benefits conferred on the beneficiaries and contrary to public policy, *In re Wynn,* 1 Ch. (1952) 271, 1 Restatement of Trusts 2d, §187, subsec. 14k, p. 409, the courts, looking at the terms of trust as a whole and, where required, at the circumstances surrounding its execution, have generally found that the power if limitless would destroy the purpose of the trust and frustrate the settlor's plan of disposition. They have in such circumstances confined its exercise by fixed standards.

In some instances this has been achieved by restricting the exercise of the authority to allocate income or charge expenses and losses to situations where there is an honest doubt as to what is proper, or where the law is unsettled; or when a reasonable doubt exists as to what action may be taken; in others by interfering with the employment of the

power when it has been used arbitrarily, or dishonestly, or fraudulently, or in bad faith. The authorities are not always clear as to which rule is being followed. Often reference is made to both. *Commissioner of Internal Revenue v. O'Keeffe*, 118 F.2d 639; *American Security & Trust Co. v. Frost*, 117 F.2d 283; *Dumaine* v. *Dumaine*, 301 Mass. 214; *Wallace* v. *Julier*, 147 Fla. 420.

1 Restatement of Trusts 2d, §187, subsec. 13j, p. 408, states:

> "The extent of the discretion conferred upon the trustee depends primarily upon the manifestation of intention of the settlor. The language of the settlor is construed so as to effectuate the purposes of the trust. The mere fact that the trustee is given discretion does not authorize him to act beyond the bounds of a reasonable judgment. The settlor may, however, manifest an intention that the trustee's judgment need not be exercised reasonably, even where there is a standard by which the reasonableness of the trustee's conduct can be judged. This may be indicated by a provision in the trust instrument that the trustee shall have 'absolute' or 'unlimited' or 'uncontrolled' discretion. These words are not interpreted literally but are ordinarily construed as merely dispensing with the standard of reasonableness. In such a case the mere fact that the trustee has acted beyond the bounds of a reasonable judgment is not a sufficient ground for interposition by the court, so long as the trustee acts in a state of mind in which it was contemplated by the settlor that he would act. But the court will interfere if the trustee acts in a state of mind not contemplated by the settlor. Thus, the trustee will not be permitted to act dishonestly, or from some motive other than the accomplishment of the purposes of the trust, or ordinarily to act arbitrarily without an exercise of his judgment."

While this court has not passed on the extent of a discretionary power to allocate or apportion, we have had before us questions concerning what limitations, if any, should be imposed on fiduciaries in their exercise of broad grants of

authority to act in other respects. Our decisions in those cases are consistent with the prevailing views. Thus, we held in *Angell* v. *Angell*, 28 R. I. 592, that a trustee's absolute discretion to distribute principal must be "reasonably exercised" and is subject "to the control of the proper court"; in *Viall* v. *Rhode Island Hospital Trust Co.*, 45 R. I. 432, that a power to apply principal as the trustee shall deem necessary is reviewable to determine whether the exercise of the discretion is "reasonable or unreasonable, as it does in the case of the exercise of discretion by an inferior tribunal"; and in *Lees* v. *Howarth*, 85 R. I. 321, that an authority to advance funds to the life tenant from principal in the "sole and uncontrolled judgment" of the trustee and when exercised by him "absolute, conclusive and binding on all parties concerned" is subject to the "good faith" test.

In those cases, in order to determine the extent of the power, we followed our settled rule and attempted to ascertain the intention of the testator or settlor where possible from the language of the instrument as a whole, and in discovering that intent we gave the words their primary, ordinary and common meaning, unless it plainly appeared they were used in another sense. This is what we are required to do with the instruments now before us.

If in following that procedure we determine that the power given to the fiduciary complainants if literally interpreted is in conflict with the decedent's dispositive intention and is destructive of the purposes for which he created the Townsend Fund, then under the authorities we must conclude that in the exercise of that power the fiduciary complainants are subject to the limiting standards to which we have already alluded.

An examination of the dispositive provisions of the will and the inter vivos trust clearly evidences decedent's estate plan. His primary concern was for the welfare of his surviving widow and he provided that during her lifetime the

entire net income from the Townsend Fund should be paid to her or applied for her benefit. Only upon her death did he provide for distribution to the respondent hospitals and as to them his intention was that they should receive some, but not all of the income. In that manner he attempted to insure that the Townsend Fund would grow. This purpose he achieved not by vesting the trustees with a discretion as to what proportion of income should be distributed and what accumulated, but by fixing that ratio with certainty at 95 per cent for distribution and 5 per cent for accumulation. His dispositive plan, as we have outlined it. is dominant and the extent of the discretion vested in the trustees to allocate receipts and charge expenses and losses when construed in its light cannot be allowed to thwart it.

The phraseology used by the decedent in creating the powers compels a similar conclusion. While the discretionary power is broad, it is measurable in his words by what "according to their [trustees] judgment * * * is right and proper * * *." A common synonym for the word "proper" is "correct." *Cook* v. *Dunbar,* 66 R. I. 266, 277. The word "right" has a similar meaning. It is defined in Black, Law Dictionary (4th ed. 1951), p. 1486, as "* * * consonance with the rules of law or the principles of morals." In providing that the exercise of the judgment of his trustees should be limited by what was "right and proper" it seems clear that the decedent did not intend that in all events their discretion should be unlimited.

The further provision that in arriving at their judgment the trustees should not be "bound by any court decision as to any other trust instrument" must be considered in the light of the decedent's dispositive intention which we have found to be dominant and the meaning we have given to the words "right" and "proper." So construed, that provision does not yield to the assumption of an intention that the

trustees in the exercise of their judgment should be free to act in total disregard of recognized standards.

In our opinion the instruments do not evidence an intention that the power to allocate and apportion is absolute and uncontrolled, but instead, when considered in the light of decedent's paramount purpose as disclosed in the instruments, evinces a purpose that it be exercised in accordance with recognized standards.

In so construing the power to allocate and apportion we are not unmindful that the decedent in amending his inter vivos trust rescinded a power of principal invasion for the benefit of his wife and relinquished a power of revocation intending at least in part thereby, and in his language, to harden the remainder interests of the respondent hospitals.

No extended discussion is required of the provisions of paragraph 10 of the inter vivos trust or clause tenth of his will. The former provides that:

> "All the foregoing powers and all discretions conferred upon *said trustee* may be exercised from time to time in the uncontrolled discretion of its committee or any of its officers having the general oversight of trust properties." (italics ours)

Clause tenth of the will is identical excepting only that between the italicized words "said" and "trustee" appear the words "Industrial National Bank of Providence as."

What we have already said as to limitations on the exercise of broad powers applies equally to these grants of an "uncontrolled discretion." Moreover, it is abundantly clear that the decedent's intention here was limited to cloaking the "committee" or "officers" of the corporate trustee having "the general oversight of trust properties" with a discretion uncontrolled by any other body or group in the administrative organization of the corporate fiduciary. If this were not so, we would be unable to find any reasonable explanation for the decedent's use of the language "Indus-

trial National Bank of Providence as" in his will and not in his inter vivos trust.

A further ground upon which the district director denied the executors' claim for a refund was that:

> "By virtue of the Ninth clause of testator's will and paragraph 9(b) of the trust instrument, the trustee is empowered to merge with any other trust of the same name and identical charitable purposes *to be created* under the will of testator's surviving wife and to exercise all the powers vested in such trustee by such will of the surviving wife; it is impossible to ascertain the scope and extent of powers to be set forth in the future by such will, being ambulatory; it is considered possible that such will may provide for a larger or smaller accumulation portion than the five per cent portion provided by decedent, or that such will may permit transactions prohibited by Code Section 681(b)(2) and Code Section 2055(e)." (italics ours)

The power to merge is contained both in paragraph 9(b) of the decedent's inter vivos trust and in clause ninth of his will.

In paragraph 9(b) the trustee is empowered:

> "from and after the death of the survivor of my wife and me, to merge said trust fund with any other trust fund of the same name and with the same charitable purposes, which *has been created* by my will or by my wife's will or by her irrevocable inter vivos trust, and to deal with the funds thus merged as one combined trust fund, and to hold any securities or other property belonging to said combined trust fund, either in its name as trustee hereunder, or in its name as trustee under any of said other trust instruments, and to exercise with regard to said securities or other property all the powers vested in it under any of said instruments." (italics ours)

In clause ninth of his will the decedent conferred an identical authority to merge with any trust fund "which *has been created* by my irrevocable inter vivos trust or by my

wife's will or by her irrevocable inter vivos trust * * *." (italics ours)

The parties argue that these provisions are administrative in nature and do not authorize the fiduciary complainants to alter the purposes for which the Townsend Fund was created or to defeat the decedent's paramount intention. We agree with their contentions.

Our consideration is confined to the provisions authorizing a merger with any other trust fund which *has been created* either under the will of decedent's wife or by her irrevocable inter vivos trust. The words "has been created" are not without significance. They refer to funds under extrinsic documents in existence at the time the decedent executed his will and inter vivos trust. Although the wife's will was ambulatory, the instruments do not permit merger with a fund under a subsequent will or under her will as it might be amended by a subsequent codicil, but only with any fund which might arise under her will in the form in which it was at the time the decedent executed the instruments we construe.

Our decision in *Nightingale* v. *Phillips*, 29 R. I. 175, is of assistance. There Susan E. Nightingale executed a document with the same formalities as required for a will. In pertinent portions its terms were: "I now wish my property to go in the same way as Harriet has now arranged for hers to go. I give to her, should she survive me, in the same way as she gives to me in her last will." Susan predeceased Harriet, who was her sister, and upon her death that document together with the instrument annexed which was identified as a counterpart of the preexisting will of Harriet was admitted to probate as her will. In passing on the question of whether there was jurisdiction to admit those papers as Susan's will the court relying on the doctrine of incorporation by reference stated at page 190, "No doubt exists in our minds as to the existence and identity of the instru-

ments so incorporated by apt words of reference in the paper executed by Susan E. Nightingale as her will." Likewise, in the instant case there is none in our minds that the power to merge was intended to be confined to any fund created under an irrevocable inter vivos trust or will of his wife in existence at the time of the execution of the decedent's will and inter vivos trust. The words "has been created" do not permit a contrary construction.

Force is lent to this conclusion when we examine the merger provision of the decedent's inter vivos trust as it stood prior to the final amendment of October 6, 1955. It then empowered the trustee to merge the trust estate "with the trust fund of the same name under the deed of trust made by my said wife * * * dated June 29, 1936, as modified by any later instrument or instruments of modification made by her * * * or with any similar trust fund that may be provided for * * * by the last will and testament of my said wife * * *." There the authority was to merge with the fund under his wife's trust or will without reference to when executed or as they might in the future be modified; here the decedent's language "has been created" clearly evidences an intention that the fund with which merger is authorized must owe its origin to a trust or will of his wife's in existence at the time he spoke.

In short, the crucial time for purposes of these provisions was when the decedent executed his will and the final amendment to his inter vivos trust. Subject to the conditions precedent of identity as to name and charitable purposes and insofar as here material, the fiduciary complainants are authorized for administrative purposes to merge the Townsend Fund with any other trust fund in existence at that time under his wife's irrevocable inter vivos trust or which might at any time thereafter come into being by reason of a will which she had executed prior thereto. It would serve no useful purpose to hypothesize possible dis-

positions under any such instruments. If the funds were or may be created by virtue of instruments in existence at the crucial time—and complainants in their bill allege not only that they were, but also that they provided for like trusts, beneficiaries and dispositions as under the Townsend Fund—their content is ascertainable; as to funds created by instruments not in existence at the crucial time, there is no power of merger.

Finally we consider the complainants' request that they be instructed as to whether they should institute suit against the United States of America for a refund. This is a request which they should address to counsel who will perhaps now as a result of this decision be in a better position than heretofore as to the advice to be given.

On March 3, 1965, the parties may present to this court for approval a form of decree in accordance with this opinion to be entered in the superior court.

*Hinckley, Allen, Salisbury & Parsons, Matthew W. Goring, Ronald C. Green, Jr., Peter C. Alegi,* for complainants.

*Edwards & Angell, Charles G. Edwards,* for respondent Rhode Island Hospital.

*Tillinghast, Collins & Tanner, William M. Sloan,* for respondent The Providence Lying-In Hospital.

*Paul B. McMahon,* for respondent St. Joseph's Hospital.

*Harold S. Moskol,* Special Assistant to the Attorney General, for J. Joseph Nugent as Attorney General.