DECISION
This case is before the Court for decision following a trial without a jury. Rule 52 of our Rules of Civil Procedure mandate that when cases are tried upon the facts without a jury, the Court shall find the facts specially and state separately its conclusions of law thereon.
The Court finds that the following facts have been established by a preponderance of the credible evidence:
 1. In April of 1993, Heather Darcy (hereinafter referred to as Plaintiff), then a 17-year-old student from West Greenwich, Rhode Island, was accepted as a freshman student at Brown University (hereinafter sometimes referred to as Defendant) to enter with the Class of 1997 (that is to say, to begin as a student in late summer of 1993).
 2. Plaintiff, as part of the application process, had not applied for financial aid.
 3. Plaintiff's mother, Linda Darcy, was aware of the existence of a scholarship fund given to Defendant, the Rathbun Scholarship Fund. Plaintiff's mother, on the day that Plaintiff received notification of her acceptance, made contact with the Financial Aid Office at Brown University in an effort to obtain details with respect to the Rathbun Scholarship Fund and to ascertain what steps had to be undertaken to qualify for it.
 4. On the following day Melissa Witter, an Assistant Director of Defendant's Office of Financial Aid, in a telephone conversation with Linda Darcy, confirmed that an endowed scholarship fund known as the Rathbun Scholarship existed and ultimately agreed to forward to the Darcys an application for financial aid.
 5. The Rathbun Scholarship Fund was created under the provisions of the Last Will and Testament of Elmer J. Rathbun (a deceased former associate justice of the Rhode Island Supreme Court — Judge Rathbun was a resident of the Town of West Greenwich who had matriculated at Brown University). Judge Rathbun's Will was dated February 11, 1951.
 6. The pertinent provisions of Judge Rathbun's Will are found in Paragraph Fourth (9) which in its entirety reads as follows:
 "(9) The entire balance of said trust estate to Brown University, a Rhode Island corporation, and its successors forever, as a fund to be known as the Judge Elmer J. Rathbun Scholarship Fund, the income only to be used to aid needy and worthy students attending said University. I direct that said income shall be awarded by the Committee on Scholarships, or other proper authority of said University, to needy and worthy applicants for financial aid who are domiciled in the Town of West Greenwich, Rhode Island, and shall be in such substantial amounts to each recipient that he or she will be aided materially rather than slightly in obtaining his or her education.
 "In order to better carry out the purposes herein expressed, I direct that after the income is available to said University if no proper applicants who are domiciled in said West Greenwich apply for aid within a period of five years therefrom, said University shall hold the income accumulated during said period for the purpose of augmenting awards to said applicants from said West Greenwich.
 "In order that the preference in favor of applicants from said Town of West Greenwich shall be well-known in said Town, I direct that the proper official of said University at the time deemed appropriate by him each year request the Town Clerk of said Town and the Superintendent of Schools, if any, of said Town, to submit to said University the names of any persons considered logical applicants for such aid, and that such proper official at said University furnish to said Town Clerk each year the names of the persons to whom aid has been granted by said University from said Judge Elmer J. Rathbun Scholarship Fund during such year.
 "Upon the termination of said five-year period, said income, other than said accumulated income, shall be available to be awarded for tuition or part tuition to any worthy applicants domiciled in any part of Rhode Island whose qualifications include financial need, satisfactory achievement or promise of future usefulness, provided that there are then no proper applicant or applicant domiciled in said West Greenwich."
 7. Sometime thereafter, the financial aid application forms as completed by the Darcys were returned to Brown. Also later in the month of April an attorney engaged by Plaintiff or by her family forwarded a letter of representation to Defendant with a request for a copy of Judge Rathbun's Will.
 8. Thereafter followed communications running from Plaintiff, her mother, and/or her counsel on the one side and the Defendant and various of its representatives on the other, including the following numerated communications:
 (A) Notice of a Stafford loan, so-called, in the amount of $2,450 — this loan later was converted to a Brown University scholarship in the amount of $2,450. Again later, on November 18, 1993, the Brown University scholarship was increased to $7,070.
 (B) In August of 1993 when Plaintiff's mother was advised that the Stafford Loan was being converted to a scholarship as previously indicated, she also was advised that use of an attorney to represent her daughter's interest in connection with this matter was counterproductive.
 9. The bill for Plaintiff's first year at Brown (September 1993 through June 1994) was in the total amount of $26,450. The bill was broken into a number of constituent elements such as:
 (a) Tuition $19,156.00
 (b) Room and Board 5,612.00
 (c) Books 680.00
 (d) Other Expenses 1,002.00
 10. In the following year, that is to say September 1994 through June 1995, Plaintiff received scholarships from Brown in the amount of $8,910 (lesser amounts had been granted prior to the beginning of that college year but were revised up to the last mentioned amount by November of 1994). For that year she was also the recipient of a State of Rhode Island grant in the amount of $450 and received Stafford loans totalling $3,360.
 11. During the academic year beginning September 1995, Plaintiff received a Brown scholarship in the total amount of $10,500. She also received a State scholarship of $700 and unsubsidized Stafford loans in the amount of $5,280.
 12. Finally, for the present college year (September 1996 through June 1997), Plaintiff has been awarded a scholarship by Defendant in the amount of $19,330. She also has received a Rhode Island scholarship totaling $700 and unsubsidized Stafford loans totaling $5,280.
 13. The aggregate amount of Rathbun (Brown University) scholarships awarded to plaintiff over her four years as a student at Brown totaled $45,810.
 14. The bills for Plaintiff's second through the fourth years at Brown never were less than the bill for the period September 1993 through June 1994 and, as a matter of fact, in each year the bill was more than in the preceding year.
 15. At the time of her acceptance to Brown University, Plaintiff had approximately $10,000 standing in her name (received sometime prior by way of gift from her grandmother).
 16. Brown University, in determining the amount of scholarship grant to be awarded to any scholarship recipient (including Rathbun Scholarship grantees), utilizes methodologies that it applies to its entire financial aid program. These methodologies start with information from and analysis of the College Scholarship Service Financial Aid Form and from Defendant's own financial aid application form. The information contained on these forms is subjected to the application of certain need methodologies (criteria) developed by the United States Department of Education (the Federal Methodology) and by the College Scholarship Service (the Institutional Methodology).
 17. The information obtained (the "raw information") includes information with respect both to the Plaintiff and to her parents (even after Plaintiff had reached the age of majority) and covered matters such as income, expense, net worth, asset value, and so forth. This information in the first instance was supplied by Plaintiff and/or by her parents when they filled out the various financial aid application forms hereinbefore referred to.
 18. A detailed discussion of the evidence with respect to what was contained in the "raw information" is unnecessary to this decision because the Court finds:
 (a) That Plaintiff (within the context of Paragraph Fourth (9) of Judge Rathbun's Will) was "needy";[1] and
 (b) That Plaintiff (within the same context) was "worthy".[2]
 19. Brown University also has stipulated and thus the Court finds that at all times material to this case there was sufficient income from the Rathbun Fund to meet all Brown University costs and expenses which Plaintiff might have incurred up to the full amount of her Brown University educational expenses.
Such additional facts as are necessary to this decision shall be set forth in the discussion of the law that follows.
Before undertaking a discussion and an analysis of the law which this Court believes to be controlling with respect to the case at bar, the Court feels compelled to comment on an issue raised by Plaintiff, which in the Court's view is not dispositive of this case, but which is of some consequence to the potential beneficiaries of Judge Rathbun's largesse. The third paragraph of Paragraph Fourth (9)[3] in mandatory language requires Brown to annually (1) solicit from the Town Clerk and the Superintendent of Schools of West Greenwich information with respect to potential applicants for the Rathbun scholarship and (2) furnish to the Town Clerk the names of persons who have benefited from the Fund during the year. Based upon the evidence produced, this Court finds that in fact Brown University has not complied with the mandate of the Testator as set forth in that paragraph. In the instant case, the Court notes that Plaintiff's mother was aware of the existence of the Rathbun Fund and thus Brown's failure to so comply was, as to this Plaintiff, of no consequence. However, the Court also notes that the Attorney General, in his capacity as administrator of charitable trusts, appeared in this case and through counsel made an opening statement and filed a post-trial memorandum in which he basically joined in each instance with defendant, Brown University, in defending against Plaintiff's cause of action. One would hope that the Attorney General's position as herein described was not reached without consideration of and perhaps some discussion with Brown University on the issues referenced in this paragraph. Truly, as stated by the Attorney General in his post-trial memorandum
 "The Attorney General has broad authority to represent the public interest in the proper use and administration of charitable trusts. . . . The Attorney General is the representative of the interests of beneficiaries and the public under charitable trusts and bequests for charitable uses (citation omitted). Further, the Attorney General is the proper person to represent the public in any judicial inquiry into the conduct of a trustee in administering a trust (citations omitted)."
Turning now to the thrust of Plaintiff's case. Basically, Plaintiff claims that under the terms of the Rathbun Fund, once a student from West Greenwich has been accorded the status of being both "needy" and "worthy," that all discretion on the part of Brown disappears. Such student ipso facto is entitled to being aided "materially rather than slightly," and this, according to Plaintiff, creates an entitlement to nothing less than a full tuition scholarship. On the other hand, Brown (joined by the Attorney General) tells us that because Judge Rathbun's Will for the most part granted broad discretion to Brown in connection with the Fund, that its obligation is to exercise honest and impartial judgment in exercising its duties as trustee. Moreover, Brown contends that absent a showing that it acted other than in good faith, this Court should not, as a matter of law, substitute its judgment for that of the named trustee. In shorthand rendition, Brown argues that absent a showing of bad faith, the Court should not micro-manage the affairs of the trust.
If Brown were vested with "absolute" or "uncontrolled" discretion pursuant to Judge Rathbun's testamentary trust, then this Court would agree. See Industrial Nat. Bank of R.I. v. RhodeIsland Hospital, 99 R.I. 289, 296-98, 207 A.2d 286, 289-91 (1965) (citing Restatement (Second) of Trusts § 187 cmt. j (1959));Lees v. Howarth, 85 R.I. 321, 326-27, 131 A.2d 229, 232 (1957);Estate of Lloyd v. United States, 650 F.2d 1196, 1202-03 (Cl. Ct. 1981) (case construing Rhode Island law). See also Cohen v. BrownUniversity, 101 F.3d 155, 185, 187-88 (1st Cir. 1996) (noting that courts should allow universities as much freedom as possible in managing their own affairs). However, this Court finds that Brown's discretion was not quite so broad and as a result, the exercise of said discretion is subject to a reasonableness review. See id.; Alumnae Ass'n of Newport Hosp. Sch. of N. v.Nugent, 101 R.I. 26, 30, 219 A.2d 763, 765 (1966) (expressing the Court's reluctance to interfere with the administration of a discretionary trust "so long as the exercise of [trustee's] discretion is legitimate"); Viall v. Rhode Island Hosp. TrustCo., 45 R.I. 432, 436, 123 A. 570, 572 (1924) (noting that while Court will not substitute its judgment for that of trustee, it will, where necessary, conduct a reasonableness review of the exercise of trustee's discretion). Thus, whether Brown's actions (as trustee) toward Plaintiff are reasonable is, in the view of this Court, what this case is all about.
Factually, predicated on the raw information furnished by the Darcy family utilizing the Federal Methodology (which is more lenient than the Institutional Methodology), Brown made certain determinations as to Plaintiff's need in each of the years here involved. Brown, through the Financial Aid Office, then tinkered with the figure so as to preclude any requirement for money earned from summer employment or school year jobs and arrived at a stated need which it then filled one hundred percent by way of scholarship from the Rathbun Fund. In relying ultimately on the Federal Methodology and then modifying its results through discretion given to the Assistant Director of Financial Aid, Brown was utilizing the discretion vested in it by the general language used by the Testator in his gift. Clearly, the use of ethereal terms such as "needy" and "worthy" and such phrases as "in such substantial amounts" (emphasis added) and "aided materially rather than slightly" all call into play the application of judgment and discretion on the part of the trustee. Here, the proper authority at Brown, the Financial Aid Office, determined that need in the first instance would be measured by reference to objective formula-based standards (the Federal and the Institutional Methodologies). Next, with reference to the Rathbun Fund, discretion to come within the donor's intent required the use of the more lenient of the two objective standards[4] with additional discretion involved through the application of the other more favorable to the student measures referred to above. These procedures resulted in (1) a determination of need and (2) a quantification of that need which then was matched one hundred percent by the award from the Fund.
Plaintiff, late in the case, raises the issue that to rely on Plaintiff's parents' assets, income, etc. in determining need and the amount thereof is improper because Plaintiff, in July of 1993 (shortly after having received her first admission to Brown University), had reached the age of majority. Suffice it to say, that in determining need, Brown is not suggesting a legal obligation on the part of Plaintiff's parents to pay the cost of their daughter's education. Cf. Ervin v. Ervin, 458 A.2d 342, 344 (R.I. 1983). Brown only is saying that it is utilizing the information about those assets and income together with expenses to measure her need and the amount thereof. Such is consistent with federal and state law. See 20 U.S.C.S. § 1087kk, mm-oo (Law. Co-op. Supp. 1996); R.I.G.L. § 16-56-7 (d). Therefore, Brown is not precluded in the instant case from expecting parental contributions in an appropriate amount when determining need.
Predicated upon all of the foregoing, this Court finds that Brown as trustee, in awarding the sums awarded to Plaintiff by way of scholarship from the Rathbun Fund, has complied with the provisions of Judge Rathbun's Will. Moreover, this Court specially finds that Brown acted reasonably and within its lawful discretion. Accordingly, judgment herein shall enter for the Defendant.
Counsel for the prevailing party shall submit an appropriate judgment for entry.
[1] Brown, having awarded Plaintiff a scholarship in each of her four years as a student at Brown, has admitted that Plaintiff, by definition, was "needy."
[2] Basically, the parties have stipulated that all students accepted at Brown University are "worthy."
[3] See finding of fact #6 above.
[4] On this point, the Court finds that Brown utilized this information, in the exercise of its discretion, as other trustees would, for example, use investment advisors in making investment decisions. As a result, this action was lawful. See Ewing v.Ruml, 892 F.2d 168, 172 (2d Cir. 1989) (citing, inter alia, Restatement (Second) of Trusts § 171 cmt. f (1959)), cert.denied, 495 U.S. 949 (1990).