DECISION
This case comes before the Court on Defendant's motion to dismiss or alternatively on Defendant's motion for summary judgment. Jurisdiction is pursuant to Super. Ct. R. Civ. P. 12(b)(6) and 56.
 Facts/Travel
On March 10, 1999, the Trustees ("Plaintiff") of a Trust created in 1935 for the primary benefit of Francis Goelet ("Trust") filed a declaratory judgment action pursuant to G.L. § 9-30-1 et seq., seeking construction of the subject Trust instrument. The Court has previously appointed four guardians ad litem to represent the interests of all of the Trust's minor, unborn, and unascertained beneficiaries, and the Trustees have sought to join all the other interested parties in this action. All of the guardians ad litem and most of the other interested parties answered the Plaintiff's petition. Two separate groups of Defendants in this matter have filed dispositive motions. The Defendants Alexandra Gardiner Goelet and Robert Gardiner Goelet filed an answer with counterclaims and cross claims, although they did not file a dispositive motion. The guardian ad litem appointed to represent the minor, unborn, and unascertained Manice descendants currently advances the motion to dismiss. Defendant Robert G. Manice and Pamela Manice advance the motion for summary judgment.
The Trust presently before the Court was created by Robert Walton Goelet under an agreement dated July 27, 1935. The Settlor created the trust for the primary benefit of his son, Francis Goelet. Francis Goelet died on May 21, 1998, and was not survived by any lineal descendants. According to the terms of the Trust, the income beneficiaries of the 1935 Trust are Francis Goelet's siblings, Beatrice, Robert, John and their respective lineal descendants. The Settlor had no children after the establishment of the Trust.
This action concerns only the distribution of the Trust created for Francis Goelet. Article "FIRST" of the Trust provides that upon termination of the Trust, the Trustees are directed to distribute the Trust principal to the lineal descendants in equal shares:
 "Upon the termination of the trust, the Trustee shall pay over the principal of the trust fund (including income accumulated and added thereto) to the lineal descendants of the said Francis Goelet then surviving in equal shares per stripes, or if there be none such, then to the lineal descendants of the Settlor then surviving in equal shares per stripes. . . ."
Article "FIRST" of the Trust further provides that the trust does not terminate until "twenty-one years after the death of the last survivor of said five person[s]": The Settlor's wife, and his four children, Beatrice, Robert, Francis and John. Article "SIXTH" of the Trust provides that the Trust is to be governed by Rhode Island Law.
At present, there are a total of nine living grandchildren of the Settlor. Beatrice has five children. Robert has two children. John has two children, and as previously stated, Francis died on May 21, 1998, not being survived by any lineal descendants. The Trust before the Court will not terminate until twenty-one years after the death of the survivors of Beatrice, Robert and John. Because Francis was not survived by any lineal descendants, upon termination, the Trust principal is to be distributed "to the lineal descendants of the Settlor then surviving in equal shares per stripes." The Trustees/Plaintiffs claim in their petition for declaratory action that the phrase "to the lineal descendants of the Settlor then surviving in equal shares per stripes" is capable of more than one interpretation, one interpretation dividing the principal into three shares and the other into nine shares. Plaintiffs have petitioned this Court pursuant to the Uniform Declaratory Judgments Act, G.L. §9-30-1 et seq., claiming that it is unclear under Rhode Island Law how the Trust principal should be divided. The Plaintiff's "submit to the guidance and instructions of this Court" with respect to the pattern of distribution of Trust principal upon termination because "it is uncertain as to which pattern of distribution would apply under Rhode Island Law." See Petition ¶ 22. The Plaintiffs believe that the pattern for distribution of the Trust principal on termination is "one of several factors to be considered by the Trustees in the exercise of their discretion to distribute Trust income." See July 26 Answer to Interrogatories.
 Dispositive Motions
At the outset, this Court must decide if it will proceed pursuant to Super. Ct. R. Civ. P. 12(b)(6) or rather Rule 56. There have been many documents submitted to this Court by all of the parties. In fact, this Court has heard oral arguments on the motions presently before the Court, at which time the Court listened to various facts, many extraneous to the pleadings in this matter. The Court has not been made aware of any objection to these extraneous documents and facts. Moreover, discovery has been conducted in this matter, much of it being referenced in the memoranda filed with this Court. Again, no objection has been made to this Court, which would prevent it from considering that information. Consequently, although the Court is not obligated to consider evidence outside the pleadings when ruling on a 12(b)(6) motion, the fact that it has been allowed to do so automatically converts the 12(b)(6) motion into one for summary judgment. See Bethlehem Rebar Indus. v. Fidelity and Deposit Co., 582 A.2d 442 (R.I. 1990). See also Tangleridge Dev. Corp. v. Joslin, 570 A.2d 1109 (R.I. 1990).
The next issue presented is whether summary judgment is a proper procedural vehicle for dealing with the Defense theory. Defendant argues that the Plaintiff's petition under the Uniform Declaratory Judgments Act is a non-justifiable claim because it merely asks the Court for legal guidance on a future event, rather than a binding decision on an actual and present dispute. Plaintiff argues that non-justifiability, as it relates to summary judgment, does not entitle the Defendant to judgment as a matter of law because it is not a theory which would resolve the matter on the merits, but rather it would only postpone the resolution of the controversy.
At first glance it would seem that what the Defendants actually seek is a determination that the Court is without subject matter jurisdiction to hear the present case. Such a motion would ordinarily be made pursuant to Rule 12(b)(1); however in the context of the Declaratory Judgments Act, the Court retains subject matter jurisdiction by virtue of § 9-30-1. Therefore, in light of the fact that the Court has the power to adjudicate the present dispute, Defendant's motion for summary judgment properly raises the distinct question of whether the Court should exercise that power. See Cranston Teachers Association v. Cranston School Commission, 386 A.2d 176 (R.I. 1978); See also Redmond v. Rhode Island Hospital Trust National Bank, 386 A.2d 1090 (R.I. 1978) ("Under the provisions of § 9-30-6, a trial justice may, in the exercise of sound judicial discretion, refuse to enter a judgment where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.") In Redmond, The Supreme Court of Rhode Island implied that a Rule 12(b)(6) motion would seldom be an appropriate procedural method by which the Court could decide whether to exercise its jurisdiction pursuant to § 9-30-6. In that case, the Court concluded that it should exercise its ability to issue declaratory relief. Contrastingly, the Court in Cranston Teachers Association held that summary judgment is the proper procedure for such a task. The subtle distinction lies in the fact that there is a difference between the granting of declaratory relief and the entertaining of the action. In relation to declaratory judgments, the discretion is not one to entertain the action but is only one to enter or to decline entry of judgment. Redmond, at 1092. Therefore, summary judgment is a proper procedural vehicle for deciding the case at bar.
 Summary Judgment
"Summary judgment is a drastic remedy to be granted sparingly." Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,711 A.2d 628, 631 (R.I. 1998). When a trial justice is ruling on a motion for summary judgment, the only question before him or her is whether there is a genuine issue of material fact that must be resolved. Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996). Therefore, summary judgment should be granted "only if an examination of the admissible evidence, undertaken in the light most favorable to the nonmoving party, reveals no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Kiley v. Patterson, 763 A.2d 583, 585 (R.I. 2000) (quoting J.R.P. Associates v. Bess Eaton Donut Flour Co., 685 A.2d 285, 286 (R.I. 1996)). The party opposing the motion has an affirmative duty to specifically set forth all facts demonstrating a genuine issue of material facts. Sisters of Mercy of Providence v. Wilkie, 668 A.2d 650, 652 (R.I. 1996) (citation omitted).
In the present case, Defendant's motion for summary judgment, when properly articulated, raises the distinct question of whether this Court should exercise its power to enter judgment pursuant to § 9-30-1 et seq. The question then narrows to whether the Court should wait for the present dispute to ripen upon the termination of the Trust, rather than resolving any apparent ambiguities within the instrument at this time. The answer depends on the purpose and language of § 9-30-1 et seq., and whether a justifiable controversy exists sufficient enough to invoke this Court's declaratory judgment discretion.
 Uniform Declaratory Judgments Act
Both the Trustees' Verified Petition and the Respondent's cross claims are brought pursuant to the Uniform Declaratory Judgments Act ("Act"). The purpose of the Act is "to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." § 9-30-12. See also Fireman's Fund Insurance Co. v. E.W. Burman Inc., 391 A.2d 99, 101 (R.I. 1978) ("The obvious purpose of the Uniform Declaratory Judgments Act is to facilitate the termination of controversies"); See also Capital Properties Inc. v. State, 749 A.2d 1069
(R.I. 1999). The Act is intended to be remedial, and is to be liberally construed and administered. § 9-30-12.
Specific sections of the Act make it expressly applicable to the construction of trusts. Section 9-30-2 provides that "[a]ny person interested under a deed, will, . . . or other writing . . . may have determined any question of construction . . . arising under the instrument . . . and obtain a declaration of rights, status, and other legal relations thereunder." Section 9-30-4 provides that "[a]ny person interested as or through . . . [a] trustee . . . in the administration of a trust . . . may have a declaration of the rights of legal relations in respect thereto . . .(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings." Before a Court exercises its jurisdiction under the Act, there must be a justifiable controversy. Sullivan v. Chafee, 703 A.2d 748, 751 (R.I. 1997). The Declaratory Judgment Act is not intended to serve as a forum for the determination of abstract questions or the rendering of advisory opinions. Lamb v. Perry,101 R.I. 538, 225 a.2d 521 (1967). As one legal scholar in the field defines justifiability:
 "To be justifiable, the controversy must be one that is appropriate for judicial determination. It must be a controversy which is definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a decree. A controversy is justifiable when there are interested parties asserting adverse claims upon a state of facts which must have accrued wherein a legal decision is sought or demanded." Anderson, Actions for Declaratory Judgments, Volume 1, § 14.
In the present case, the Trust instrument requires that upon termination, the Trust principal should be distributed to "the lineal descendants of the Settlor then surviving in equal shares per stripes. . . ." Although termination of the Trust will not happen for quite some time, the Trust instrument also currently requires the Trustees (Plaintiffs) to pay income to Robert, Beatrice and John (the lineal descendants of the Settlor) as "in their discretion" they determine it is "advisable." The present exercise of this discretion by the Trustees is allegedly becoming very difficult in view of the aforementioned language "per stripes," as it is allegedly ambiguous and capable of different interpretations. It is for that reason the Trustees, in their petition and in their answers to interrogatories, indicate that they are seeking guidance in properly construing the Trust language. Admittedly, it is very difficult to discern any articulable and actual controversy between the parties in this case. The Defendants in this action have seemingly been very careful not to expound any interpretation of the Trust language which would be contrary to that of the Plaintiffs. However, the adversarial briefs filed in this matter certainly raise a strong inference that a substantive controversy does exist. Indeed, were this case to be tried on the merits, thereby engaging this Court in an interpretive analysis of the Trust language, it cannot be doubted that each of the parties to the action would have varying constructions of the subject Trust language.
Furthermore, the Rhode Island Supreme Court has strongly indicated that a suit for a declaratory judgment as to the powers of a trustee may be maintained by the trustee and executor of the will creating the trust and by a life beneficiary, even though all parties agree on the construction of the instrument and there is no adversary element in the suit. Industrial National Bank of Rhode Island v. Rhode Island Hospital,99 R.I. 289, 207 A.2d 286 (1965). The Court in Industrial National Bank essentially recognized the appropriateness of construing instruments where such construction would be given binding force for federal tax purposes. Id. As in that case, the judgment given by this Court will have a binding effect in the future if the issue is ever presented again, albeit years from now. Moreover, the issue that the Plaintiffs raise may have an important bearing upon prudent person action by one or more of the parties. See Billings v. Fowler, 279 N.E.2d 906 (Mass. 1972) (Court construed the terms of a will even though no direct, immediate interest of the present life beneficiary would be affected, and immediate estate planning problems were evident and dependent on a resolution of the subject ambiguity). The discretionary action of Plaintiff/Trustees under the terms of the Trust will inherently create controversy if the language of the Trust remains ambiguous and uncertain.
Therefore, it is evident under § 9-30-1 et seq., instructions concerning the proper meaning of a trust may be obtained despite the fact that no direct, immediate interest of a present life beneficiary will be affected. This Court is of the opinion that such a decision is in accordance with the liberal thrust of § 9-30-1, so as to remove and afford the parties relief from uncertainty. See First Portland National Bank v. Rodrigue, 157 Me. 277, 172 A.2d 107 (1961) (When a trustee asks for advice as to present problems and also future ones and the latter are connected with the former in an intimate way, the court will advise with respect to both types of problems). See also Bogert, The Law of Trusts and Trustees, Rev. 2d ed, Chap. 27, § 559 ("Equity has jurisdiction over all matters relating to trust property, and in the execution and administration of the trust, in all cases of doubt as to their rights and liabilities and what their conduct should be, trustees are entitled to and should seek instruction and direction from the court.")
 Conclusion
In the case before the Court, the declaration sought will be of practical help in ending the inherent controversy which has been briefed to this Court. To delay this matter would simply bring the parties before us now, back at another juncture in the future. Consequently, adjudication should occur at this time, which will be conclusive and binding on the issue if it ever arises again. The motion to dismiss is denied. The motion for summary judgment is denied. Counsel shall prepare the appropriate order after notice.